IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHARON K. WALKER                                                    PLAINTIFF

v.                              CASE NO. 4:15-CV-00695-SWW

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
A Public Body Corporate                                          DEFENDANT

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.

### INTRODUCTION

This Memorandum Brief is submitted in support of the Motion for Summary Judgment filed

by Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons discussed

herein, Defendant is entitled to summary judgment as a matter of law.

### II.

### APPLICABLE LAW

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment

if the moving party has established its right to a judgment with such clarity as to leave no room for

controversy, and the non-moving party is not entitled to recover under any discernable circumstances.

*See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue
> as to any material fact, and that the moving party is entitled to
> judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts.").

### III.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant, Pulaski County Special School District ("District"), is a school district organized pursuant to the laws of the State of Arkansas for the purpose of providing a public education to students within its established boundaries in Pulaski County, Arkansas. *See* Amended Complaint ("Complaint") at 4.  Plaintiff, Sharon K. Walker ("Plaintiff" or "Walker"), was hired by the District in or about June 2005 as a certified teacher *Id.* at 5.  Walker began working at Mills High School as an alterative learning environment ("ALE") teacher until she relocated to the District's Maumelle High School during the 2011-2012 through the 2014-2015 school years. *See* Deposition of Walker, pp. 27-28, 34 hereto attached as Exhibit 1.   During the 2011-2012 through 2013-2014 school years, Walker taught economics and business law classes. Ex. 1 at 35-39.  During the 2014-2015 school year, Walker taught economics and business law classes for five of the seven-period school day had a conference period, and was assigned one period of ALE. *Id.* at 40-50.  Walker testified in her deposition that during the 50-minute period of ALE she taught the roughly 12-15 students Algebra I, Algebra II, and Geometry, depending on the student's grade level. *Id.* Other teaches rotated periods to teach the ALE students other subjects. *Id.*  It was intended that the ALE students, who were enrolled in the program for attendance, learning or behavioral issues, were to learn the three math subjects on a computer, but the software programs were allegedly not available until November, and

until then Walker taught the students the subjects with worksheets. *Id* at 44 -45. Walker complained that this additional 50-minute class period was a hardship, as it involved preparing for three additional courses and the students had behavioral issues. *Id*. at 48. There was a substitute para-professional in the classroom the entire semester to assist Walker until a full-time para-professional could be hired. *Id*. at 52. When Walker complained that she needed additional support, a special education teacher was also added to the class. *Id*. at 50-53.

Upset that her schedule had changed one class period from the previous year, to now include one class of ALE, Walker filed a grievance pursuant to District policy, which was heard by her principal, and then the District Superintendent, Dr. Jerry Guess, both of whom denied her grievance and maintained Walker's class schedule. *Id*. at 75-76. She appealed her grievance to the District hearing panel, which sat in the place of an elected school board, but then took leave under the Family and Medical Leave Act ("FMLA") and did not attend her hearing, therefore failing to exhaust all her administrative remedies. *Id.* at 76-78.

According to her Amended Complaint, Walker was diagnosed with a mental disability which interfered with her ability to perform her job as a classroom teacher on or around December 30, 2014. *Id.* at 7. Walker took a leave of absence to deal with her disability and claims she was diagnosed with depression and that her affect was "abnormal" and her intellectual functioning was "impaired." *Id.* at 8-9. Walker attributed the need to take FMLA leave to worry, anxiety and stress related to the new class schedule, which included the ALE period. *Id*. at 78.

Walker did not return to work the remainder of the 2014-2015 school year, but remained on FMLA leave. *Id*. at 99. Walker wrote to the District's Chief Executive Officer, Paul Brewer ("Brewer"), advising that her FMLA leave was set to expire April 8, 2015, and asked for an

extension, which was granted.  *See* email dated March 25, 2015, hereto attached as <u>Exhibit 2</u> and Ex. 1 at 99.  Walker alleges that in or about June of 2015, while she was still on FMLA leave from her position at Maumelle High School, she discussed with Brewer about applying for positions in the District where she could teach all business classes.  Ex. 1. at 101.  Walker testified she applied for teaching positions at Mills High School, Sylvan Hills High School, and Robinson Middle School, but was not hired for any of these positions.  *Id*. at 100-105.  During this same time period, on or about June 10, 2015, Brewer received a letter from Walker's clinical psychologist, asking that the District accommodate Walker with a schedule of all business classes.  *See* Medical Letter, hereto attached as <u>Exhibit 3</u>.  This was the first documentation the District ever received requesting any form of work accommodation for Walker.

On July 6, 2015, Brewer called Walker and offered her a schedule of all business classes as the District's North Pulaski High School for the 2015-2016 school year.  *See* Ex. 1 at 105 and email dated July 7, 2015, hereto attached as <u>Exhibit 4</u>.  Walker refused to take this position in the District, although it accommodated her request for all business classes, because she did not want to be placed at North Pulaski High School.  Ex. 1. at 105.  Walker cited concerns that North Pulaski High School was set to detach from the District and become part of the newly formed Jacksonville North Pulaski School District, and all teachers would have to reapply to that new district for the 2016-2017 school year.  *Id*.  Brewer advised Walker in his July 7, 2016 email that the District only offered teachers one-year contracts and he could not offer her a multi-year contract.  *See* Ex. 4.  Brewer asked for an immediate response as to whether Walker planned to take the position offered at North Pulaski High School or remain in her current position at Maumelle High School, and she never replied.  *Id*.

-4-

On August 3, 2015, Walker wrote to Brewer asking that her FMLA leave be extended through September 3, 2015. *See* Email dated August 3, 2015, hereto attached as Exhibit 5. Brewer responded on August 13, 2015, stating that all positions had been filled, but if she was released to return to work by September 3, 2015, he would do his best to find her a position, and if he did not hear from her, he would assume she had resigned. *See* August 13, 2015 letter, hereto attached as Exhibit 6. Walker had exhausted her FMLA leave.

Walker claims the offer of employment to teach at the North Pulaski High School came with a condition; that once the Jacksonville North Pulaski School District became operational during the 2016-2017 school year, she would have to reapply with no guarantee for continued employment. *See* First Amended Complaint at 17. Despite the District offering Walker continued employment upon her return from medical leave, she declined to accept the position and claims she was terminated from the District. *Id.* at 23. Walker claims the District refused to make a reasonable accommodation for her, by forcing her to teach classes that would be in conflict with her medical condition, in violation of the Americans with Disabilities Act. *Id.* at 27. Walker further claims that the District retaliated against her by terminating her after she had filed a Charge of Discrimination with the EEOC. *Id.* at 32. Walker claims this retaliatory discharge was discriminatory, in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 34.

Defendant has denied all allegations set forth in Walker's Charge of Discrimination, her Complaint and Amended Complaint filed before this Court. Defendant asserts that Walker was not subjected to any retaliatory acts by Defendant in violation of Title VII of the Civil Rights Act of 1964, and that Defendant did not violate the Americans with Disabilities Act.

## IV.

## ARGUMENT AND AUTHORITY

**A.    THE DISTRICT DID NOT DISCRIMINATE AGAINST PLAINTIFF ON ACCOUNT OF A DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.**

1.    Applicable Law.

To establish a prima facie claim under the Americans with Disabilities Act of 1990 ("ADA"), Plaintiff must show that: (1) she is disabled as defined by 42 U.S.C. § 12102; (2) she is qualified to perform the essential functions of the employment position, with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of his disability. *See Gutridge v. Clure*, 153 F.3d 898, 900 (8th Cir. 1998), *cert. denied*, 526 U.S. 1113, 119 S. Ct. 1758, 143 L. Ed.2d 790 (1999).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Equal Employment Opportunity Commission has issued regulations defining the three elements of disability contained in Section (A). *See* 29 C.F.R. § 1630.2 (1999). "Physical or mental impairment" is defined as "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic and skin and endocrine." 29 C.F.R. § 1630.2(h)(1). "Major Life Activities" are defined as "functions such as caring for ones self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means an individual is "unable

to perform [, . . . ] or is significantly restricted as to the condition, manner, or duration under which [he] . . . can perform [ . . . ] a Major Life Activity . . . which the average person and the general population can perform . . . .ö  29 C.F.R. § 1630.2(j)(1).

      2.     Discussion.

Walker is unable to establish a prima facie ADA claim.  Walker is not disabled as defined by the ADA.  Walker does not have a substantially limiting physical or mental impairment and cannot show her circumstances restrict a major life event by limiting her ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and training.  ADA protection extends only to a qualified individual with a disability, namely, õan individual with a disability who, with or without reasonable accommodation, [who] can perform the essential functions of the employment position that such individual holds or desires.ö  42 U.S.C. § 12111(8).

Walker contends that all her alleged impairments stemmed from her new work schedule - the addition of a 50-minute ALE periodówhich caused her trouble sleeping, worrying, anxiety and stress. Ex. 1 at 78.  The only complaint Walker had was the 50-minute period of ALE, which was just one period in a seven period work day.  An impairment only rises to the level of a disability if it substantially limits one or more of her major life activities; that is, if the impairment significantly restricts the duration, manner, or condition under which she can perform a particular major life activity as compared to the average person's ability to perform that same activity. *Paleologos v. Rehab Consultants*, 990 F. Supp. 1460, 1465 (N.D. Ga. 1998).   The United States Supreme Court has also held that for one to õbe substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.ö

*Sutton v. United Air Lines*, 527 U.S. 471 (U.S. 1999) (overruled, in part, by statute, on different grounds).

Here, Walker, at best, only complains she was impaired during one 50-minute period in her work day, where she had to teach students in ALE.  This is not enough to render her as having a disability.  In *Dewitt v. Carsten,* 941 F. Supp. 1232 (N.D. Ga. 1996), a jailhouse deputy argued she was disabled due to stress from interacting with prison inmates, as well as her supervisor, the sheriff. The Court found she was not substantially limited in the activity of working where her condition only restricted her performance in one job ó that of a jailhouse deputy.  Here, Walker cited no impairment from teaching business or economic classes, but only when teaching the one ALE period.  In fact, Walker has returned to teaching at the North Little Rock School District as a special education teacher. Ex. 1 at 96.  Courts have interpreted õclass of jobsö quite broadly.  A injured police offer was determined to not be õdisabledö under ADA, as a õpolice officerö is too narrow a range of jobs, and not a õclass of jobsö or õbroad range of jobsö for ADA purposes.  *Rossbach v City of Miami* (2004, CA11 Fla) 371 F3d 1354, 15 AD Cas 1064, 17 FLW Fed C 638.  Here, Walkerøs claim that she cannot teach ALE classes is simply to narrow a range of job, especially considering the fact she admitted she was capable of teaching a full schedule of other classes, and has subsequently returned to teaching.

Furthermore, the stress and anxiety Walker describes is generally not considered a disability under ADA.  In *Olson v. Dubuque Community Sch. Dist*., 137 F.3d 609 (8th Cir. Iowa 1998), the Court held that an elementary school counselorøs depression did not render her unable to do her particular job, much less that she was unable to do a broad range of jobs.

Even assuming *arguendo* that Walker has a disability, which the District disputes, the District worked to accommodate her condition. To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an õinteractive process.ö *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir. 1999). In *Fjellestad*, the Eighth Circuit held that

> A disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: 1) the employer knew about the employeeøs disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employerøs lack of good faith.

*Fjellestad*, 188 F.3d at 952 (citation omitted).

Here, Walker fails to meet the *Fjellestad* factors. The District did not receive Walkerøs request for an accommodation until June 10, 2015, when it received a letter from Walkerøs medical provider suggesting that she be assigned all business classes. *See* Ex. 3. Walker admitted the District offered her employment teaching all business classes at North Pulaski High School, per the requested accommodation. *See* Ex. 4. Walker agreed the offered position was a reasonable accommodation, but she turned down the position, citing the looming detachment of North Pulaski High School from the District. Walker complained she would be giving up seniority, would have to drive farther, there was no guarantees of a future job, and a future job in a new district could be for less pay. Ex. 1 at 105. Walker provides no legal support for this argument. Walker was always employed on a one-year contract, so her employment in the District was never guaranteed for more than a year.

Furthermore, she admitted she could not be certain she would not be retained by the new District, but that she would simply have to re-apply. *Id.*

Courts have consistently held employee reassignments and transfers are reasonable accommodations. *Wright v North Carolina State Univ.* (2000, ED NC) 169 F Supp 2d 485 (state university offering hearing-impaired housekeeper a day shift when she objected to working night shift was reasonable). Furthermore, Walker's complaint of a longer drive has no legal support. *Regan v Faurecia Auto. Seating, Inc.* (2012, CA6 Mich) 679 F3d 475, 114 BNA FEP Cas 1651, 2012 FED App 130P (employee resigned after employer changed his work schedule by one hour, disability discrimination claims failed because employee's proposal of modified work schedule for purposes of commuting during hours with allegedly lighter traffic was not reasonable accommodation).

Lastly, ADA requires the employee to be able to perform the essential functions of the job, with or without reasonable accommodation. *Gutridge*, 153 F.3d at 900.  On August 3, 2015, while the District was waiting to hear from Walker regarding its offered accommodation, she requested her FMLA leave be extended through September 3, 2015.  Ex. 5.  Despite the accommodation offered by the District, Walker was still not able to perform the position based on medical documentation she submitted to the District.

**B.      THE DISTRICT DID NOT RETALIATE AGAINST PLAINTIFF ON ACCOUNT OF HER FILING A CHARGE OF DISCRIMINATION.**

Walker alleges she was terminated by the District in retaliation for filing a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), contending that she was discriminated against due to her disability. *See* Amended Complaint at 33. The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability

because of the disability of such individual in regard to . . . discharge of employees . . . .ö 42 U.S.C. § 12112(a). õAn employment decision is ïbecause of the disabilityøwhen the plaintifføs disability was a motivating factor behind the decision.ö *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033 (7th Cir. 1999). õTherefore, for an employer to be liable under the ADA for discriminatory discharge, the disability must be the catalyst which prompted the employer to take the adverse employment action, and a factor without which the employer would not have acted.ö *Id.* at 1034. õOf course, in order for a disability to be a motivating factor behind a decision to terminate an employee, the decision maker must have knowledge of the disability.ö *Id.*; *see Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) (õIf the employer does not know of the disability, the employer is firing the employee ïbecause ofø some other reason.ö).

Walker was never discharged from the District.  No adverse employment action was taken against her.  Walker was never released from a doctorøs care and the District simply considered her rejection of the accommodation to teach business classes at North Pulaski High School and her refusal to  return to work as a resignation.  Ex. 6.  Brewer told Walker, õIf your doctor says on September 3, 2015, that you are medically able to work, and you desire to return to work, let me know right away.  I will do my best to find and offer you a position with PCSSD.  If your doctor doesnøt release you, or if I donøt hear from you, I will assume that you have resigned.ö  Ex. 6.

The District allowed Walker to take FMLA leave from December 30, 2015 through September 3, 2015.  Walkerøs EEOC Charge was filed August 5, 2015.  *See* Notice of Charge, hereto attached as Exhibit 7.  As of August 13, 2015 the District was still working with Walker to find her a position allowing her to take FMLA leave through September 3, 2015, and still continue

employment upon her return.  The  time line of events clearly shows the District was working with

Walker to find her continued employment in the District after she filed her EEOC Charge.

## CONCLUSION

Based upon the foregoing argument and authority, Defendant respectfully submits that its

Motion for Summary Judgment should be granted and that the Plaintiff's Amended Complaint should

be dismissed with prejudice.

Respectfully submitted,

BEQUETTE & BILLINGSLEY, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
E-mail: jbequette@bbpalaw.com
       ckees@bbpalaw.com

By:_____/s/ Cody Kees_____
      Jay Bequette, Bar Number 87012
      Cody Kees, Bar Number 2012118

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2017, I electronically filed the foregoing with the Clerk
of Court using the CM/ECF system, which will send notification of such filing to the following:

Austin Porter, Jr.
Porter Law Firm
323 Center Street, Suite 1035
Little Rock, AR 72201
aporte5640@aol.com

_____/s/ Cody Kees_____

Z:\Pcssd\Walker, Sharon\Brief in Support of MSJ.wpd

-12-