IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHARON K. WALKER                                                    PLAINTIFF

VS.                              CASE NO. 4:15-CV-00695 SWW

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
A Public Body Corporate                                            DEFENDANT

PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000e et seq. (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 12101 (Americans with Disabilities Act), in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, Sharon K. Walker has been subjected to, all on account of her disability. The plaintiff also brings this action against the defendant for having retaliated against her after complaining about acts of discrimination. This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

Statement of Facts

The plaintiff is a certified school teacher, and is currently employed by the North Little Rock School Teacher, as a special education teacher. The plaintiff started with the North Little Rock School District in February 2016. The plaintiff did not have an interest in becoming a special education teacher. (**See Deposition of Sharon K. Walker attached herein as Plaintiff's Exhibit "A", pp. 112-113**). However, once the plaintiff was terminated from the Pulaski County Special

1

School District (PCSSD), she was forced to take a job with the North Little Rock School District, teaching special education. In order to become a special education teacher, the plaintiff had to go back to school in order to become certified.  Currently the plaintiff works for the North Little Rock School District under an Additional License Plan (ALP), until she gets her special education certification. (**Walker's depo., p. 16**).

Sharon Walker was born in Little Rock, Arkansas, but was raised in Carlisle, Arkansas. The plaintiff graduated from Carlisle High School in 1985.  (**Walker's depo., p. 12**).  The plaintiff graduated from Philander Smith College in 1993, with a BA in Business Administration. The plaintiff later got her Master's in the Art of Teaching from Harding University in 2001. (**Walker's depo., p. 13**).  The plaintiff is currently enrolled at Arkansas State University, and working on her EDS.  (**Walker's depo., p. 14**).

Upon graduating from college, the plaintiff went to work for the Juvenile Justice Center. The plaintiff served as the case coordinator for Judge Wiley Brandon.  (**Walker's depo., pp. 20-21**).  The plaintiff left the juvenile justice center upon completing her teaching degree, and went to work for the Little Rock School District.  The plaintiff had a provisional license at the time of her hire for the Little Rock School District. (**Walker's depo., p. 21**).  The plaintiff taught business education courses from 2000 to 2002 for high school and middle school students.  (**Walker's depo., p. 22**).  The plaintiff then moved to Atlanta, Georgia with her husband, who went to work for the Martin Luther King Jr. Foundation.  The plaintiff taught school for the Atlanta Public Schools, teaching at Northside High School. (**Walker's depo., p. 19**).  The plaintiff taught business classes for the Atlanta Public Schools from January 2002 to May 2003.  The plaintiff then returned to Arkansas, where she continued her teaching profession for the Little Rock School District.  (**Walker's depo., p. 25**).

Mrs. Walker then went to work for the Pulaski County Special School District. Mrs. Walker started with the Pulaski County Special School District in June 2005. (**See Defendant's Statement of Undisputed Fact No. 2**). During most of her tenure with the PCSSD, the plaintiff taught business and economics classes for the school district. The first job that the plaintiff took for the PCSSD was teaching at Mills High School. (**Walker's depo., p. 27**). The plaintiff was in the ALE program for one year, which was being phased out in the PCSSD. When the enrollment dropped at Mills, the plaintiff then transferred to Maumelle High School. (**Walker's depo., p. 29**). The plaintiff transferred to Maumelle High School during the 2011-2012 school year. (**Walker's depo., p. 34**). The principal at Maumelle High was Rebecca Guthrie. Ms. Guthrie is a Caucasian female principal. (**Walker's depo., pp. 75, 93**). The plaintiff taught her regular business classes, in addition to teaching Algebra II from September through December 2011. The plaintiff was involved in an accident in January 2012, and was off the remainder of the school year. (**Walker's depo., p. 34**).

Mrs. Walker returned to Maumelle during the 2012-2013 school year. During the 2012-2013 school year, the plaintiff taught Economics, Business Law I and II. (**Walker's depo., p. 36**). During the 2013-2014 school year, the plaintiff taught Economics, Business Law I and II. The plaintiff also assigned to assist with the in-school suspensions. (**Walker's depo., p. 39**). The plaintiff started having problems with Ms. Guthrie during the fall of 2013. Ms. Guthrie moved the plaintiff's classroom to an area that she describes as a "cubbyhole." Ms. Guthrie also told the plaintiff that she was short one class. The plaintiff started having headaches, and was getting dizzy. The school nurse took the plaintiff's blood pressure, and it was really high. The school nurse was so concerned, that she Mrs. Walker that they needed to call the paramedics. (**Walker's depo., p. 61, 80**). However, Mrs. Walker drove herself to the doctor, and her blood pressure was

still high.  The plaintiff was given a prescription for Triamterene, which is a fluid pill.  Also, the room that the plaintiff was moved to had no smartboard, and it was isolated. (**Walker's depo., p. 62**).   Also, whenever the plaintiff wrote up white students, Ms. Guthrie would call her in and question her about it, but would not do the same for the black students she wrote up. (**Walker's depo., p. 82**).  All of these events were causing the plaintiff to start having problems with her health.  The plaintiff was having high blood pressure due to the stress that she was being placed under. (**Walker's depo., p. 81**).

On February 22, 2014, the plaintiff's doctor Srinivasan Ramaswamy, M. D., sent the school a note requesting that the PCSSD accommodate Ms. Walker's health condition, by allowing her to have a classroom close to the restroom.  (**See Plaintiff's Exhibit "B"**).  Due to having to take the fluid pills, the plaintiff was needing to go the restroom a lot.  However, despite the letter from her doctor requesting an accommodation, Ms. Guthrie refused to move the plaintiff's room close to the restroom. After several emails back and forth in reference to the class change, and the plaintiff threatening to grieve the matter, Ms. Guthrie finally changed the classroom.  (**Walker's depo., pp. 63-64**).  Dr. Ramaswamy sent a second accommodation letter on July 31, 2014. (**See Plaintiff's Exhibit "C"**).   After much grief and stress over the matter, Ms. Guthrie moved the plaintiff's class for the following school year, 2014-2015.  However, it was still not close to the restroom.  The plaintiff had to file another grievance, and seek legal advice.  Ms. Guthrie even went as far as counting the steps from the classroom to the restroom. (**Walker's depo. p. 68**).

Mrs. Walker got her schedule late for the upcoming school year – 2014-2015.  Mrs. Walker found out during the Summer of 2014, that she was going to have to teach Algebra I, II, and Geometry, in addition to teaching her regular economics and business law classes.[1]  (**Walker's**

---

[1] Pursuant to the terms of the collective bargaining agreement, the district was required to notified the plaintiff on or before June 1st her teaching assignment. **See Plaintiff's Exhibit "N", Article VI, Section 6(A)**.

**depo., pp. 41-42**).   On July 30, 2014, the plaintiff sent an email to Ms. Guthrie asking for relief, but she was not given any. (**See series of emails attached herein as Plaintiff's Exhibit "D"**). The plaintiff had to do five (5) preps, when she previously had only three (3) preps to do.  The plaintiff had to teach three (3) math courses during a 50 minute class time.  Having five (5) preps is the time that is used in order to prepare for the next class. (**Walker's depo., pp. 43-44**).   In addition to teaching her two (2) regular business courses, the plaintiff also had to teach three (3) math courses during a fifty (50) minute period in the Alternative Learning Education class.  The children in ALE were problematic, they had all kinds of behavior issues, the class was chaotic. (**Walker's depo., pp. 45, 47-50**).  Although there were supposed to have been two (2) teachers in the ALE class, the plaintiff was left alone.  The district finally got the plaintiff some assistance with the ALE class in November 2014. (**Walker's depo.,, pp. 51-52**).

The plaintiff was at her breaking point. Mrs. Walker was seen by her doctor on December 30, 2014.  Lee Nayles, M. D., treated the plaintiff for severe depression.  Dr. Nayles took the plaintiff off work due to her deteriorated health condition.  (**See Plaintiff's Exhibit "E-1 and E-2"**). The plaintiff was suffering from depression, having difficulty sleeping, worrying, anxiety, and stress.  (**Walker's depo., p. 78**).   The plaintiff went out on FMLA on December 30, 2014. (**Walker's depo., p. 87**).  The plaintiff was granted extension of FMLA, and she was off work on unpaid leave until the end of the school year. (**Walker's depo., p. 99**).  The plaintiff was treated by Patricia L. Griffen, Ph.D., for her depression, panic attacks, and OCD.  (**See Plaintiff's Exhibit "F"**).  On June 10, 2015, Dr. Griffen wrote a letter to Paul Brewer giving information about the plaintiff's medical condition, and stating it was her professional opinion that the plaintiff be only allowed to teach her regular business class schedule as an accommodation to her health condition. (**See Plaintiff's Exhibit "G"**).

Paul Brewer told the plaintiff that the district was expecting some vacancies, because people were retiring. Mr. Brewer told the plaintiff to wait for the posting of the vacant positions, and that he would place her in a business education class. (**Walker's depo., pp. 101-102**). There were three (3) business classes that opened in the PCSSD. The vacant business classes were opened at Sylvan Hills Middle, Robinson Middle, and Mills High School. The plaintiff applied for the positions at Robinson and Mills on June 15, 2015, and for the position at Sylvan Hills on June 23, 2015. Despite her qualifications, the plaintiff was not granted an interview. (**Walker's depo., p. 103**). The plaintiff was granted an interview with Robinson and Mills, but not at Sylvan Hills. (**Walker's depo., p. 104**) (**See also Plaintiff's Exhibit "H" – Job Postings**). On June 26, 2015, the plaintiff sent an email to Paul Brewer and others requesting to be accommodated under the Americans with Disabilities Act, by being placed in a job where she can teach business classes, like she had done for the past 13½ years. (**See Plaintiff's Exhibit "I"**).

On June 30, 2015, the PCSSD notified the plaintiff that the Sylvan Hills Middle Business Class was closed, due to it either being filled or not being filled. (**See Plaintiff's Exhibit "J"**). On July 9, 2015, the PCSSD notified the plaintiff that the Robinson Middle Business Class had either been filled or closed without being filled. (**See Plaintiff's Exhibit "K"**). On July 7, 2015, Paul Brewer sent an email to the plaintiff informing her that Superintendent Jerry Guess had agreed to place the plaintiff in a Business Education position for 190 days at North Pulaski High School for the 2015-2016 school year. (**See Plaintiff's Exhibit "L"**). It was common knowledge that the Jacksonville/North Pulaski was detaching from the PCSSD to form its own district. All teachers who accepted jobs with Jacksonville/North Pulaski would only have a job for the 2015-2016 school year. There was no guarantee that the plaintiff would have had a job at the end of the school

year, had she accepted the position at North Pulaski. This was too stressful for the plaintiff to have accepted. (**Walker's depo., p. 109**).

The plaintiff had a schedule for the upcoming 2015-2016 school year that gave her three (3) Algebra classes, double blocked at 50 minutes per class. This would have required the plaintiff to spend 250 minutes per week, and double blocked, meant 500 minutes per week. All of the plaintiff's business classes had been taken away. (**Walker's depo., p. 108-109**). This schedule is what prompted the plaintiff's doctor to send her letter dated June 10, 2015. (**See Plaintiff's Exhibit "G"**). That is when the plaintiff was offered a job at North Pulaski, teaching business courses, but it was with the pending detached Jacksonville/North Pulaski School District. (**Walker's depo., p. 105**). In light of the fact that the defendant was unwilling to provide the plaintiff with a reasonable accommodation, this caused the plaintiff's health to take a turn for the worse. On August 3, 2015, Dr. Nayles sent a letter advising the defendant that the plaintiff was suffering from severe depression, and was unable to work, and that her next appointment is scheduled for September 3, 2015. (**See Plaintiff's Exhibit "H"**). Finally, on August 17, 2015, undersigned counsel sent a letter to Paul Brewer, again asking that reasonable accommodations be made for the plaintiff. Counsel also informed Mr. Brewer that if the district was willing to meet the accommodations as requested by the plaintiff's doctors, then the plaintiff is able and willing to return to work. Undersigned counsel stated emphatically that the plaintiff was not resigning, and was ready to return to work. (**See Plaintiff's Exhibit "H"**). The defendant still insisted on the plaintiff going to Jacksonville/North Pulaski School District. The defendant never offered the plaintiff a position within the PCSSD. In essence the defendant constructively discharged the plaintiff.

Statement of Law

The plaintiff brings this cause of action contending that she was the victim of disability discrimination and retaliation, when she was terminated from her place of employment with the defendant. This action is being pursued pursuant to Title VII of the Civil Rights Act of 1964 (as amended). As will be demonstrated by this brief, and the response to the defendant's statement of undisputed facts, there remain genuine issues of material fact, making summary judgment inappropriate.

A.      Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil (FRCP), a movant is entitled to an order granting summary judgment when there is no genuine issue as to any material fact.

> Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The court must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party prevail as a matter of law.'

Twin City Bank, et al. v. Verex Assurance, Inc., 733 F.Supp. 67 (E.D.Ark. 1990), citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "On summary judgment the plaintiff need only present sufficient evidence to raise genuine doubt as to the legitimacy of the defendant's motives." Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005).

"Summary judgment should be 'cautiously invoked' so that no person will be improperly deprived of his Seventh Amendment right to a jury trial where there is no genuine issue as to any material fact." Robertson v. White, 635 F.Supp. 851, 870 (W.D. Ark. 1986). The Eighth Circuit has also held that "a judge does not sit as a trier of fact when deciding a motion for summary

judgment even if the case is scheduled to be heard without a jury." Medical Institute of Minnesota v. Nalts, 817 F.2d 1310 (8th Cir. 1987).

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and any doubt should be resolved in favor of the party resisting the motion. Ozark v. Milling Co., Inc. v. Allied Mills, Inc., 480 F.2d 1014 (8th Cir. 1973); *see also*, Tolan v. Cotton, 572 U.S. ___, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The courts have held that since summary judgment is such an extreme remedy, a motion for summary judgment should be granted "only if no genuine issue exists as to any material fact." Haas v. Weiner, 765 F.2d 123 (8th Cir. 1985). "In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give him the benefit of all reasonable inferences." Green v. St. Louis Housing Authority, 911 F.2d 65, 68 (8th Cir. 1990); Kegal v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986); Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1244 (8th Cir. 1991); Canada v. Union Electric Company, 135 F.3d 1211, 1212 (8th Cir. 1997). Affidavits are not necessary to oppose a motion for summary judgment. *See* Adams d/b/a D. L. Adams Motors v. Hudspeth Motors, Inc., 587 S.W.2d 227 72 (Ark.App. 1979).

> Fed.R.Civ.P. 56(c) provides that summary judgment shall be entered if the 'pleadings, depositions answers to interrogatories, and admissions on file together with the affidavits, *if any*, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'

Green v. St. Louis Housing Authority, 911 F.2d 65, 68 (8th Cir. 1990) (emphasis added).

"Summary judgment should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the non-moving party." Holly v. Sanyo Mfg. Inc., 771 F.2d 1161, 1164 (8th Cir. 1985).

The Courts have also held that "[s]ummary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.2d 1097, 1099 (8th Cir. 2000), *citing Smith v. St. Louis University*, 109 F.2d 1261, 1264 (8th Cir. 1997) (Arnold, R., C.J., Beam & Alsop, JJ.); *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999) (Bowman, Heaney & Longstaff, JJ.); *Lynn v. Deaconess Med. Center West Campus*, 160 F.3d 484, 486 (8th Cir. 1998) (Arnold, R., Beam & Arnold, M., JJ.); *Helfer v. United Parcel Serv., Inc*., 115 F.3d 613, 615 (8th Cir. 1997) (Loken, Arnold, M. & Gunn, JJ.); *Bialas v. Greyhound Lines, Inc*. 59 F.3d 759, 762 (8th Cir. 1995)(Beam, Gipson & Murphy, JJ.0; *Oldham v. West*, 47 F.3d 985, 988 (8th Cir. 1995) (Hanson, Gibson, F. & Will, JJ.); *Weissman v. Congregation Shaare Emeth*, 38 F.3d 1038, 1045 (8th Cir. 1994), (McMillian, Bright & Loken, JJ); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)(Arnold, R., C. J. Wollman & Beam, JJ.); *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991) (McMillian, Fagg & Strom, JJ.); *Hillebrand v. M-Tran Industries, Inc.*, 827 F.2d 363, 364 (8th Cir. 1987)(Lay, C. J. Heaney & Larson, JJ.). "Summary judgment should seldom be granted in employment discrimination cases because intent is often the central issues and claims are often based on inference." Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005).

The Eighth Circuit cautioned against using summary judgment in discrimination cases. "Notably, we have repeatedly emphasized that 'summary judgment should be used sparingly in the context of employment discrimination and/or retaliation cases where direct evidence of intent is often difficult or impossible to obtain.'" Torgerson v. City of Rochester, 605 F.3d 584, 593 (8th Cir. 2010), *quoting*, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 11117 (8th Cir. 2006); *see also*, Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005)[2].  We have also cautioned that

---

[2] Undersigned counsel recognizes that the Eighth Circuit, in a deeply divided opinion (6-5), indicated that "[b]ecause summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary

summary judgment should not be granted in 'close' cases. '[T]he need to resolve factual issues in close cases is the very reason we have juries.' Torgerson, 605 F.3d at 594, citing, First National of Omaha v. Three Dimension Systems Products, Inc., 289 F.3d 542, 545 (8th Cir. 2002); *see also*, Keho v. Anheuser-Busch, Inc., 995 F.2d 117, 120 (8th Cir. 1993).

> [t]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc*., 494 U.S. 545, 554-555 (1990); *Liberty v. Lobby, Inc*., *supra*., at 254; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6 (1962). 'Credibility determinations, the weighing of the evidence, and all the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' *Liberty Lobby*, *supra*, at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Wright & Miller 299*. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

> Summary judgment is warranted when there remain no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review de novo the summary judgment record in light most favorable to Bell to determine whether or not a reasonable person could make inferences supporting plaintiff's claims. *See Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111 (8th Cir. 1995). But neither the district court's function nor ours is to weigh evidence in the summary judgment record to determine the truth of any factual issue; we merely determine whether there is evidence creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 249-51 (1986). Because employment discrimination cases frequently turn on inferences rather than direct evidence, the court must be particularly deferential to the party opposing summary judgment.

---

are unauthorized and should not be followed." Torgerson, et al. v. City of Rochester, Eighth Circuit Court of Appeals, No. 09-1131 (June 1, 2011) (*en banc*) (emphasis added). It is really not clear whether the Eighth Circuit reversed all of those opinions, or just criticized them. Nevertheless, the practical effect of the "seldom be granted" language as espoused by the Eighth Circuit in *Bassett*, supra., and its progeny, in recent times has had no serious application, to benefit civil rights litigants. *See* Clermont and Swab, *Employment Discrimination Plaintiffs In Federal Court: From Bad to Worse?*, 3 Harv. L. & Pol'y Rev. 1 (Winter 2009).

DeAudra Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) (emphasis added), *citing* Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1205 (8th Cir. 1997).

At the summary judgment stage, "[t]he controlling issue ordinarily is whether or not there exists a genuine issue of fact regarding any discriminatory motive." Strate v. Midwest Bankcenter, Inc.,398 F.3d 1011, 1017-1018 (8th Cir. 2005). The Eighth Circuit further stated that, "[w]e have long recognized that a genuine issue of fact regarding unlawful employment discrimination may exist notwithstanding the plaintiff's inability to directly disprove the defendant's proffered reason for the adverse employment action." Strate, 398 F.3d at 1017, *citing* O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995).

> [A] plaintiff bringing an employment discrimination claim may succeed in resisting a motion for summary judgment where the evidence, direct or circumstantial, establishes a genuine issue of fact regarding an unlawful motivation for the adverse employment action (i.e., a motivation based upon a protected characteristics), even though the plaintiff may not be able to create genuine doubt to the truthfulness of a different, yet lawful, motivation.

Strate, *supra*.

"At summary judgment, '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 702 (5th Cir. 2014), *quoting*, Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).

B. Americans with Disabilities Act

The plaintiff contends that the defendant violated the Americans with Disabilities Act (42 U.S.C.S. § 12101, *et seq.*), when they terminated her from her place of employment and refused to allow her a reasonable accommodation. Furthermore, the defendant refused to engage in the interactive process with the plaintiff, once she requested a reasonable accommodation.

> The ADA prohibits employers from discriminating 'against a qualified individual with a disability because of the disability of such individual.' 42 U.S.C. § 12112(a). To establish a claim under the ADA, a plaintiff must show 'that he has a disability as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and that he has suffered adverse employment action because of his disability.' *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995) (citing *Wooten*, 58 F.3d at 385). 'Disability' is defined as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' 42 U.S.C. § 12102(2).

Gutridge v. Clure, 153 F.3d 898, 900 (8th Cir. 1998).

> The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability.' 42 U.S.C. § 12112. To avoid summary judgment dismissing the ADA claim, Moore must show that at the time in question she was disabled, she was nonetheless qualified to perform the essential functions of her job with or without reasonable accommodation, and she suffered an adverse employment decision because of her disability.

Moore v. Payless Shoe Source, Inc., 139 F.3d 1210, 1212 (8th Cir. 1998), *citing* Price v. S−B Power Tool, 75 F.3d 362, 365 (8th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996). "An impairment is 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii)." Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948-49 (8th Cir. 1999). The severe depression and anxiety that the plaintiff was experiencing interfered with her ability to sleep and work. (**Walker's depo., p. 78**) (*See also*, **Plaintiff's Exhibit E-1 – E-2**).

"To obtain relief under the ADA, an aggrieved employee must establish that he has a disability as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that he has suffered adverse employment action because of his disability." Benson v. Northwest Airlines, Inc., 62 F.3d 1108,

13

1112 (8th Cir. 1995).  The court went on to hold that "[o]nce the plaintiff makes 'a facial showing that reasonable accommodation is possible,' the burden of production shifts to the employer to show that it is unable to accommodate the employee.  62 F.3d at 1112, *citing* Mason v. Frank, 32 F.3d 315, 318-19 (8th Cir. 1994).   The Eighth Circuit has also held that "a judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury."  Medical Institute of Minnesota v. Nalts, 817 F.2d 1310 (8th Cir. 1987).  At the summary judgment stage, all facts must be viewed in favor of the plaintiff.  Therefore, the Court must assume that the Complainant was not provided with reasonable accommodations, nor were the limited accommodations provided on a time basis.   In Riordan v. Kempiners, 831 F.2d 690 (7th Cir. 1987),  Judge Posner explained:

> Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it...  The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were a different race..., but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for...firing...a worker who is not superlative.

Id. At 697-98.

There seems to be little debate about whether the plaintiff is disabled.  "To be regarded as disabled under the ADA, Brunko would have to show that Mercy mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or Mercy mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities."  260 F.3d at 942, *citing* Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).   Pursuant to 42 U.S.C.S. § 12102(2),

As used in this Act:

(2) Disability.  The term 'disability' means, with respect to an individual -

14

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having an impairment.

"A plaintiff may show that he is disabled within the meaning of the ADA by demonstrating that he is 'regarded as' having an impairment that 'substantially limits one or more of [his] major life activities." Pugh v. City of Attica, Indiana, 259 F.3d 619, 626 (7th Cir. 2001).  The Court held that *Brunko* was not regarded as being disabled because they offered her an opportunity to apply for other jobs, which would be more conducive to her *permanent* lifting restriction.  Again, Mrs. Walker was not afforded reasonable accommodations.  Under the regulations promulgated by the EEOC, the 'regarded as' language means:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraphs (h)(1) or (2) of [§ 1630.2] but is treated by a covered entity as having a substantially limiting impairment.

> 29 C.F.R. § 1630.2(l).  *See Burch v. Coca Cola Co.*, 119 F.3d 305, 322 (5th Cir. 1997); Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).  In *Bridges*, the court held that in order for an employer to have regarded an impairment as substantially limiting in the activity of working, the employer must regard an individual as significantly restricted in the ability to perform a class or broad range of jobs.  *Bridges*, 92 F.3d at 332.

Sherrod v. American Airlines, Inc., 132 F.3d 1112 (5th Cir. 1998).

Plaintiff's Disability

In the case at bar, the plaintiff has been diagnosed with suffering from severe depression, obsessive compulsive disorder (OCD), anxiety, and stress.  The plaintiff had to take a leave of

absence due to her medical condition from December 30, 2014 until the end of the school year in May 2015. Dr. Patricia Griffin, Ph.D. noted that the plaintiff was suffering from anxiety, panic attacks, and depression in a physician statement dated March 3, 2015. (**See Plaintiff's Exhibit "M"**). Dr. Lee Nayles noted that Ms. Walker was suffering from severe depression, which prevented her from working at the time, and he was taking her off work as of December 30, 2014. (**See Plaintiff's Exhibit E-1**). "A person is disabled within the meaning of the ADA if he demonstrates that he has a physical or mental impairment that substantially limits one or more of his major life activities, that he has a record of such an impairment, or that he is regarded as having such an impairment." Amir v. St. Louis University, 184 F.3d 1017, 1027 (8th Cir. 1999), *citing* Land v. Baptist Medical Center, 164 F.3d 423, 424 (8th Cir. 1999); 42 U.S.C. § 12102(2)(A-C). In Amir, supra., the plaintiff had a disability due to his obsessive compulsive disorder, that affected his "ability to eat and drink without vomiting, his ability to concentrate and learn, and his ability to get along with others." 184 F.3d. at 1027. The Court found that "eating, drinking, and learning are major life activities," thus Amir was disabled within the meaning of the Act. 184 F.3d at 1027. In the case at bar, the plaintiff suffered from obsessive compulsive disorder and depression, that interfered with her ability to work; therefore, she disabled within the meaning of the Act.

Reasonable Accommodations

In the case at bar, the plaintiff had requested that the defendant allow her to teach her normal business classes, for which she had taught for the past 13½ years. The defendant refused, requiring the plaintiff to teach five (5) subjects, Business Law I & II, Economics, Algebra I, Algebra II, and Geometry. (**Walker's depo., p. 42**). Requiring the plaintiff to teach five (5) subjects violated the terms of the collective bargaining agreement between the Pulaski County Special School District and the Pulaski Association of Classroom Teachers. According to this

agreement, it provides that "[t]he District shall not assign a regular classroom teacher instruction in more than three (3) subject areas without the teacher's acceptance." (**See Plaintiff's Exhibit "N" – Article VI, Sec. 8(B)**). The plaintiff also testified that she had five (5) preps as well. (**Walker's depo., p. 43-44**). Again, according to the collective bargaining agreement, "[t]he District will not assign a regular classroom teacher more than three (3) course preparations without the teacher's acceptance." (**See Plaintiff's Exhibit "N" – Article VI, Sec. 8(C)**).

The Eighth Circuit has held "that an employer's deviation from its own policies can, in some instances, provide evidence of pretext." Russell v. TG Missouri Corp., 340 F.3d 735, 746 (8th Cir. 2003). In another case, the Eighth Circuit held, "[a]n employer's failure to follow its own policies may support an inference of pretext." Floyd v. State of Missouri Department of Social Services, 188 F.3d 932, 937 (8th Cir. 1999), *citing*, Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024, n. 6 (8th Cir. 1998). See also Ledbetter v. Alltel Corporate Services, 437 F.3d 717, 722 (8th Cir. 2006). "While a district court may not second-guess an employer's valid, non-discriminatory employment decisions, the court still must analyze whether the proffered reasons are a pretext for intentional discrimination." 437 F.3d at 723, *citing*, Moschetti v. Chicago, Central & Pac. Railroad Co., 119 F.3d 707, 710 (8th Cir. 1997). This is also evidence of bad faith on the part of the Pulaski County Special School District, by forcing the plaintiff to accept a schedule that was in violation of the collective bargaining agreement.

On July 30, 2014, the plaintiff filed an informal grievance with the principal Rebecca Guthrie over being assigned the three (3) math classes for the Alternative Learning Education class, in addition to having to teach her regular business classes. The plaintiff advised Ms. Guthrie that this assignment was a recipe for a stroke and heart attack, and that Ms. Guthrie had her medical accommodation letter from her doctor. (**See Plaintiff's Exhibit "O"**). The plaintiff

also filed a Level III grievance with Dr. Jerry Guess.  (**See Plaintiff's Exhibit "P"**).  Due to the district's refusal to relieve that plaintiff of these added teaching responsibilities, the plaintiff went into a severe state of depression, and started suffering from anxiety, and other mental issues, that she was required to take leave of absence as of December 30, 2014.

On June 10, 2015, the plaintiff's doctor sent a letter to Paul Brewer requesting that accommodations to Mrs. Walker be made by allowing her to teach her regular business schedule. (**See Plaintiff's Exhibit "G"**).  Dr. Lee Nayles sent a similar letter to Paul Brewer on June 10, 2015 as well, asking for accommodation for Mrs. Walker, to allow her to teach her regular business classes.  (**See Plaintiff's Exhibit "Q"**).  "Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in [an] interactive process so that *together* they can determine what reasonable accommodations might be available."  E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 699 (5th Cir. 2014), *quoting*, E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 622 (5th Cir. 2009).

> An employer commits unlawful discrimination under the ADA if the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].' 42 U.S.C. § 12112(b)(5)(A).  The ADA's regulations state that: 'To determine the appropriate reasonable accommodation it may be *necessary* for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.' 29 C.F.R. § 1630.2(*o*)(3). (emphasis added).  The EEOC's interpretative guidelines also state that: 'Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.  The appropriate reasonable accommodation is best determined through flexible, interactive process that involves both the employer and the [employee] with a disability.' 29 C.F.R. § 1630, App. § 1630.9. (emphasis added).

Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 951 (8th Cir. 1999).

> Although an employer will not be held liable under the ADA for failing to engage in the interactive process if no reasonable accommodation was possible, we find that for purposes of summary judgment, the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith.

Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 952 (8th Cir. 1999).

In the case at bar, the plaintiff requested to be placed in one of the open business classes that were available.   Paul Brewer told the plaintiff that the district was expecting some vacancies, because people were retiring.   Mr. Brewer told the plaintiff to wait for the posting of the vacant positions, and that he would place her in a business education class.  (**Walker's depo., pp. 101-102**).  There were three (3) business classes that opened in the PCSSD.  The vacant business classes were opened at Sylvan Hills Middle, Robinson Middle, and Mills High School.   The plaintiff applied for the positions at Robinson and Mills on June 15, 2015, and for the position at Sylvan Hills on June 23, 2015.  Despite her qualifications, the plaintiff was not granted an interview with Sylvan Hills. (**Walker's depo., p. 103**).   The plaintiff also applied for the Robinson and Mills business classes, and was granted an interview, but was not hired. (**Walker's depo., p. 104**) (**See also Plaintiff's Exhibit "H" – Job Postings**).  On June 26, 2015, the plaintiff sent an email to Paul Brewer and others requesting to be accommodated under the Americans with Disabilities Act, by being placed in a job where she can teach business classes, like she had done for the past 13½ years. (**See Plaintiff's Exhibit "I"**).

> It is well established that under the ADA, the employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which is qualified. See 42 U.S.C. § 12111(9)(B). The option of reassignment is particularly important when the employee is unable to perform the essential functions of his or her current job, either with or without accommodation or when accommodation would pose an undue hardship for the employer. See 29 C.F.R. Pt. 1630, App. § 1630.2(o).

19

Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 677 (7th Cir. 1998).

On July 7, 2015, Paul Brewer sent an email to the plaintiff informing her that Superintendent Jerry Guess had agreed to place the plaintiff in a Business Education position for 190 days at North Pulaski High School for the 2015-2016 school year. (**See Plaintiff's Exhibit "L"**). It was common knowledge that the Jacksonville/North Pulaski was detaching from the PCSSD to form its own district. All teachers who accepted jobs with Jacksonville/North Pulaski would only have a job for the 2015-2016 school year. There was no guarantee that the plaintiff would have had a job at the end of the school year, had she accepted the position at North Pulaski. This was too stressful for the plaintiff to have accepted. (**Walker's depo., p. 109**). In essence, the defendant was attempting to get rid of the plaintiff, and pass her along to another employer – North Pulaski/Jacksonville School District. The defendant had other jobs available within its own school district, but wanted to send the plaintiff to another employer. Again, at the time the defendant received letters from both of the plaintiff's doctors, there were vacant business education classes at Mills, Sylvan Hills Middle, and Robinson; however, rather than assigning the plaintiff to one of these positions, it offered to send her to another employer. "The ADA itself tells us that it encompasses reassignment to a vacant position for which the employee is 'qualified.' See 42 U.S.C. § 12111(9)(B)." Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 677 (7th Cir. 1998). "The employer's duty to accommodate requires it to consider transferring the employee to any of these other jobs, including those that would represent a demotion. See 29 C.F.R. § 1630.2(j)(ii)(C)." 141 F.3d at 678. "Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified. See 42 U.S.C. § 12111(9)(B)." Willis v. Conopco, Inc., 108 F.3d 282, 284 (11th Cir. 1997).

The plaintiff was required to apply for vacant positions within the PCSSD, which she should not have had to do.  Paul Brewer told the plaintiff that the district was expecting some vacancies, because people were retiring.  Mr. Brewer told the plaintiff to wait for the posting of the vacant positions, and that he would place her in a business education class.  (**Walker's depo., pp. 101-102**).  There were three (3) business classes that opened in the PCSSD.  The vacant business classes were opened at Sylvan Hills Middle, Robinson Middle, and Mills High School.  The plaintiff applied for the positions at Robinson and Mills on June 15, 2015, and for the position at Sylvan Hills on June 23, 2015.  The plaintiff was granted an interview for the Mills and Robinson business education classes, but not for the Sylvan Hills business education class.  (**Walker's depo., p. 103**).  The plaintiff also applied for the Robinson position, and was granted an interview.  (**Walker's depo., p. 104**) (**See also Plaintiff's Exhibit "H" – Job Postings**).  On June 26, 2015, the plaintiff sent an email to Paul Brewer and others requesting to be accommodated under the Americans with Disabilities Act, by being placed in a job where she can teach business classes, like she had done for the past 13½ years. (**See Plaintiff's Exhibit "I"**).  The plaintiff was not offered any of these vacant positions within the PCSSD.

> The ADA definition of 'reasonable accommodation' lists the kinds of reasonable accommodations that may be required of an employer.  Reasonable accommodations may include
>
> > (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> > (B) job restricting, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
>
> 42 U.S.C. § 12111(9) (emphasis added).  The term 'reassignment to a vacant position' indisputably indicates more than just an alteration to the employee's

existing job.   Reading § 12111(8) and (9) of the ADA together, a reasonable accommodation may include a *re* assignment from the employee's current job to one that he or she desires.

Legislative history further supports this reading of the ADA.   The House Committee on Education and Labor that reported out the bill that became the ADA:

> Reasonable accommodation may also include reassignment to a vacant position.  If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker.

H.R.Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345. Neither Midland Brake nor amicus have cited, nor have we found, any contrary legislative history.

Smith v. Midland Brake, Inc., 180 F.3d 1154, 1161-62 (10th Cir. 1999).

The plaintiff was made to apply for the three (3) vacant positions within the PCSSD.   The PCSSD could have easily placed the plaintiff in one of the vacant positions.  However, the district made the plaintiff apply for the positions, and only granted her an interview on one of the three (3) vacant positions.   The district hired three (3) individuals from outside the district to fill these vacancies.  (**See Affidavit of Sharon Walker attached herein as Plaintiff's Exhibit "R"**).   In essence, the district had no desire of retaining the plaintiff, and was offering to send her to a different employer – the newly formed Jacksonville/North Pulaski School District.

> Moreover, 'reassignment' must mean something more than the mere opportunity to apply for a job with the rest of the world. As the D. C. Circuit has explained:

> > [T]he word 'reassign' must mean more than allowing an employee to apply for a job on the same basis  as anyone else.  An employee who on his own initiative applies for and obtains a job elsewhere in the enterprise would not be described as having been 'reassigned'; the core word 'assign' implies some active effort on the part of the employer.

Smith v. Midland Brake, Inc., 180 F.3 1154, 1164 (10th Cir. 1999), *quoting*, Aka v. Washington

Hospital Center, 156 F.3d 1284, 1304 (D.C. Cir. 1998).

> [T]he reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position. Reassignment is, in fact, one of the forms of reasonable accommodation specifically mentioned by the statute to be utilized if necessary and reasonable to keep an existing disabled employee employed *by the company*.

Smith v. Midland Brake, Inc., 180 F.3d 1154, 1165 (10th Cir. 1999) (emphasis added).

The plaintiff was certainly qualified in teaching business education classes, and should

have been reassigned to one of them, rather than having to compete with the "rest of the world."

The plaintiff had taught business classes during her tenure with the PCSSD.

> Thus, if the reassignment language merely requires employers to consider on an equal basis with all other applicants an otherwise qualified existing employee with a disability for reassignment to a vacant position, that language would add nothing to the obligation not to discriminate, and would thereby be redundant. *See Aka*, 156 F.3d at 1304. ('[T]he ADA's reference to reassignment would be redundant if permission to apply were all it meant; the ADA already prohibits discrimination 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures.')

Smith v. Midland Brake, Inc., 180 F.3d 1154, 1164 - 1165 (10th Cir. 1999).

The PCSSD violated the ADA by requiring the plaintiff to apply for one of the three (3)

vacant positions. The PCSSD did not grant the plaintiff an interview the Sylvan Hills business

education class, but did grant an interview for the vacant positions at Robinson and Mills, but did

not offer her either position. Again, the plaintiff should have been placed in one of the vacant

positions, without having to apply. As the EEOC interpretative guidelines state, "[r]eassignment

means that the employee gets the vacant position if s/he is qualified for it. Otherwise, reassignment

would be of little value and would not be implemented as Congress intended." 180 F.3d at 1166 -

1167.

23

> If a disabled employee had only a right to require the employer to consider his application for reassignment but had not right to reassignment itself, even if the consideration revealed that the reassignment itself, even if the consideration revealed that the reassignment would be reasonable, then this promise within the ADA would be empty.  The employer could merely go through the meaningless process of consideration of a disabled employee's application for reassignment and refuse it in every instance. It would be cold comfort for a disabled employee to know that his or her application was 'considered' but that he or she was nevertheless still out of a job – a job to which he or she was otherwise qualified and as to which he or she had a reasonable claim to reassignment.  We do not think Congress intended such a hollow promise when it listed reassignment as one of the specific reasonable accommodations in 42 U.S.C § 12111(9).

Smith v. Midland Brake, Inc., 180 F.3d 1154, 1167 (10th Cir. 1999).

Retaliation

After the plaintiff requested a reasonable accommodation, the plaintiff was subjected to retaliatory conduct by being offered a position with another school district, rather than with the defendant.  Furthermore, the defendant retaliated against the plaintiff by refusing to "reassign" the plaintiff to one of the vacant business education classes within its district.

> The ADA contains an anti-retaliation provision that prohibits discrimination against an individual because that individual 'opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing' conducted pursuant to the statute.  42 U.S.C. § 12203(a).

Amir v. St. Louis University, 184 F.3d 1017, 1025 (8th Cir. 1999).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) that she engaged in protected activity; (2) that adverse employment action occurred; and (3) a causal connection between the two."  Kobrin v. University of Minnesota, 34 F.3d 698, 704 (8th Cir. 1994), *citing*, Jackson v. Missouri Pac. R.R., 803 F.2d 401, 406-07 (8th Cir. 1986) and Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).  The employer must then articulate a legitimate, nondiscriminatory

24

reason for the adverse action, then the employee must be given an opportunity to show that the proffered reason was pretextual, and that their protected activity was the true reason. *See* <u>Smith v. Riceland Foods, Inc.</u>, 151 F.3d 813, 818 (8th Cir. 1998).

"This court has recognized the established rule that `an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.'" <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1206 (8th Cir. 1990). "We emphasize that the alleged manifestations of defendants' retaliation (such as less favorable treatment) need not themselves amount to constitutional violations. The violation lies in the **intent** to impede access to the courts." <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1206-1207 (8th Cir. 1990), *citing* <u>Sanders v. St. Louis County</u>, 724 F.2d 665, 666 (8th Cir. 1983).

To establish a prima facie case of retaliation, a plaintiff must show, among other things, that she suffered an adverse employment action at the hands of her employer. *See Montando v. Farmland Industry, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, *see Kerns v. Capital Graphics, Inc*., 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not, *see Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). <u>Spears v. Missouri Department of Corrections and Human Resources</u>, 210 F.3d 850, 853 (8th Cir. April 28, 2000).

The plaintiff's doctors requested that the defendant afford reasonable accommodations to the plaintiff on June 10, 2015. The plaintiff herself also asked for reasonable accommodations in

her email of June 25, 2015.  Undersigned counsel also requested that the plaintiff be afforded reasonable accommodations in a letter dated August 17, 2015.   The defendant responded by offering the plaintiff a job with a different employer – Jacksonville/North Pulaski School District, and refused to reassign the plaintiff to one of the vacant business education classes at Mills, Robinson, or Sylvan Hills.  In essence, the defendant was attempting to divorce itself of the plaintiff, and give her to another employer, only for 190 days.  "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, *Riceland*, 151 F.3d at 819-20; *Smith v. St. Louis University*, 109 F.3d 1261, 1266 (8th Cir. 1997), but in general more than a temporal connection is required to present a genuine factual issue on retaliation, *Kiel v. Select Artificials, Inc*., 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*)."  Peterson v. Scott County, et al., 406 F.3d 515, 524 (8th Cir. 2005).   The Eighth Circuit also said, "[b]ut this much is clear: temporal proximity rises in significance the closer the adverse activity occurs to the protected activity.  The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes."  E.E.O.C. v. Kohler Co., 335 F.3d 766, 774 (8th Cir. 2003).

Constructive Discharge

It is clear that the plaintiff was constructively discharged by the defendant.  The plaintiff was never offered one of the vacant positions with the defendant school district.  Once the plaintiff asked for reasonable accommodations, by being allowed to teach business education classes, the defendant by responding "you can go to the Jacksonville/North Pulaski School District, where you will have a job for one year."  In essence, the defendant was ridding itself of the plaintiff, by passing her along to a different employer.  "A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit."   "If an

employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir. 1997), *citing*, Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981). The defendant made it clear that the plaintiff was no longer welcome with its district. Therefore, the plaintiff was constructively discharged.

In conclusion, the plaintiff has presented sufficient evidence that despite her disability, she was not afforded reasonable accommodations, when requested. Also, the defendant refused to involve in the interactive process, once the plaintiff advised that she was requesting reasonable accommodations for her disability. The defendant's response to the plaintiff's requests for accommodations, was to offer her a job with another employer, the newly formed Pulaski North/Jacksonville School District, despite having vacant business classes within its own district. Therefore, the Court should deny the defendant's motion for summary judgment.

Respectfully submitted,

**/s/ Austin Porter Jr.**
Bar Number 86145
PORTER LAW FIRM
The Tower Building
323 Center Street, Suite 1300
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
E-mail: Aporte5640@aol.com

27

CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas - Western Division, on the 13th day of March 2017, using the CM/ECF system, which is designed to send notification of such filing to the following:

Jay Bequette
Cody Kees
BEQUETTE & BILLINGSLEY, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201-3469

jbequette@bbpalaw.com
ckees@bbpalaw.com

**/s/Austin Porter Jr.**