† CATHOLIC HEALTH
† INITIATIVES

# St. Vincent Family Clinic

FAMILY PRACTICE
William H. Riley Jr., M.D.
Forrest B. Miller, M.D.
Charles H. Rodgers, M.D.
Daniel C. Dillard, M.D.
Robert B. Casper, M.D.
Ralph F. Joseph, M.D.
R. Jeffrey Eisenach, M.D.
William F. Joseph, M.D.
Gil Foster, M.D.
Steve Simpson, M.D.
Keith Cooper, M.D.
Michael Stout, M.D.
Katherine Mitchell, MD
Robin J. Perry, M.D.
Srinivasan Ramaswamy, M.D.
Kara Cooper, M.D.
Camille Braswell, M.D.

INTERNAL MEDICINE
Gastroenterology
Duane Velez, M.D.

URGENT CARE
Susan Ebel, M.D.

RADIOLOGY
Radiology Associates, P.A.

PEDIATRICS
Vince Calderon, M.D.
Mitzi Washington, M.D.
Laura Williams, M.D.
Brad Kaemmerling, M.D.
Rachel White, M.D.

DIETARY
Julia Brooks, R.D.

CLINIC DIRECTOR
Judy A. Baker

February 22, 2014
**WALKER, SHARON·K**
**DOB:1/9/1967**

To Whomsoever it may concern:
I have been seeing Ms. Walker for several years now. She has history of hypertension, on diuretics.
She needs extra time everyday, to use bathroom frequently.
For any questions, please contact our office.

Thank you,

Dr. Ramaswamy



PLAINTIFF'S
EXHIBIT
B

ST. VINCENT HEALTH SYSTEM

4202 South University   Little Rock, Arkansas 72204   P 501.562.4838   F 501.562.1958
10000 Rodney Parham   Little Rock, Arkansas 72227   P 501.221.0888   F 501.221.2769
1110 W. Main Street, Jacksonville, AR 72076   P 501-982-2108   F 501-982-4951
1811 Rahling Rd, Ste 120 Little Rock, AR 72223

† CATHOLIC HEALTH
INITIATIVES

# St. Vincent Family Clinic

FAMILY PRACTICE
William H. Riley, Jr., M.D.
Forrest B. Miller, M.D.
Charles H. Rodgers, M.D.
Daniel C. Dillard, M.D.
Robert B. Casper, M.D.
Ralph E. Joseph, M.D.
R. Jeffrey Fisenach M.D.
William E. Joseph, M.D.
Gil Foster, M.D.
Steve Simpson, M.D.
Keith Cooper, M.D.
Michael Stout, M.D.
Katherine Mitchell, MD
Robin J. Perry, M.D.
Srinivasan Ramaswamy, M.D.
Kara Cooper, M.D.
Camille Braswell, M.D.

INTERNAL MEDICINE
Gastroenterology
Duane Velez, M.D

URGENT CARE
Susan Ebel, M.D.

RADIOLOGY
Radiology Associates, P.A.

PEDIATRICS
Vince Calderon, M.D.
Mitzi Washington, M.D.
Laura Williams, M.D.
Brad Kaemmerling, M.D.
Rachel White, M.D.

DIETARY
Julia Brooks, R.D.

CLINIC DIRECTOR
Judy A. Baker

July 31, 2014

WALKER, SHARON K    DOB: 01/09/1967
To Whomsoever it may concern:
Ms. Walker is a patient in our clinic. she is on diuretic, which can cause increased urinary frequency. Based on her symptoms, she needs frequent restroom breaks.

Please feel to contact us for any further questions.

Thanking you,

Dr. S.Ramaswamy



PLAINTIFF'S
EXHIBIT

C

4202 South University   Little Rock, Arkansas 72204   P 501.562.4838   F 501.562.1958
10000 Rodney Parham   Little Rock, Arkansas 72227   P 501.221.0888   F 501.221.2769
1110 W. Main Street, Jacksonville, AR 72076   P 501-982-2108   F 501-982-4951
1811 Rahling Rd., Ste. 120 Little Rock, AR 72223   P 501-552-8150 F 501-552-8199

ST. VINCENT HEALTH SYSTEM

Sharon Walker
Maumelle High School

---------- Forwarded message ----------
From: **WALKER SHARON** <swalker1000@pcssd.org>
Date: Wed, Jul 30, 2014 at 7:04 PM
Subject: Informal Grievance Retaliation
To: GUTHRIE REBECCA < RGUTHRIE@pcssd.org>
Cc: " johnwalkeratty@aol.com" < johnwalkeratty@aol.com>, GUESS JERRY < jguess@pcssd.org>, TACKETT JOHN
< jtackett@pcssd.org>, WARREN JANICE < jwarren@pcssd.org>, WHITFIELD SHERMAN <
SAWHITFIELD@pcssd.org>, " jspringer@gabrielmail.com" < jspringer@gabrielmail.com>, Sandra Roy <
aeasroy@aol.com>



**PLAINTIFF'S EXHIBIT**

_D_

Mrs. Guthrie:

Please be informed that via this written notice of communication is my informal grievance.

I respectfully request a change of teaching assignment from the Alternative Learning Classroom to a Business Education assignment.

The ALC assignment will entail teaching Algebra I, II & Geometry, which means three preps during one class period, as well as Economics, Business Law I & II. This adds up to five preps.

I know that you have my medical accommodation letter from my doctor and that type of schedule is a sure recipe for a **heart attack and /or stoke!!!**

I recall in May of the 2012-2013 school year you called me to your office to discuss my teaching assignment and at that time you informed me that I was a class short of having a full schedule. I was also informed because of my seniority over the other teachers in the business department, I had the option of bumping a business teacher or I could go to the SAC room and relieve the SAC teacher during her lunch break. I truly appreciated that kind gesture. However, this school year I was never afforded that opportunity. I am now very concerned and perplexed as to why the scheduling of my

class assignment is such a dilemma for the past two years. I have been with the district for over ten years. My question is why only in the last two years has this been a problem?

**This is clearly a method of retaliation against me by you for whatever reasons you have formulated against me.**

Please provide me with a written response to my informal grievance.

Thanks for your cooperation in this matter.

Respectfully yours,

Sharon Walker

Maumelle High School

501-234-2525

6/24/15 12:00 PM

Sharon Walker
Maumelle High School

---------- Forwarded message ----------
From: **WALKER SHARON** <swalker1000@pcssd.org>
Date: Thu, Jul 31, 2014 at 12:30 PM
Subject: RE: Informal Grievance Retaliation
To: GUTHRIE REBECCA < RGUTHRIE@pcssd.org>
Cc: " johnwalkeratty@aol.com" < johnwalkeratty@aol.com>, GUESS JERRY < jguess@pcssd.org>, TACKETT JOHN
< jtackett@pcssd.org>, WARREN JANICE < jwarren@pcssd.org>, WHITFIELD SHERMAN <
SAWHITFIELD@pcssd.org>, " jspringer@gabrielmail.com" < jspringer@gabrielmail.com>, Sandra Roy <
aeasroy@aol.com>

Ms. Guthrie

We both are aware ALC students are not on grade level due to either high numbers of suspensions, absences,
handicapping conditions and etc... it is unreality for you to imply ALC students will not need any or just a little of
assistance.   The  online curriculum will require more than a tutor.  Have you reviewed the ALC students standardize
test scores in math?  Have you reviewed their IEP's? Majority of these students are not on grade-level, proficient or
advance.

I agree with you regarding the ALC students are in need of veteran teachers.  Our current math teachers are veteran
teachers.  They have taught math at least three consecutive years.  They are abreast of the latest strategies, training
and tech skills to assist our ALC students in achieving their highest potential.

I disagree with you regarding teaching Geometry, Algebra I & II in the Alternative Learning Classroom during one
class period does not require planning and  preparation.  Again this adds up to five preps.  I am rather appalled you
are willing to give the ALC students  who are already at a disadvantage just anything for the sake of meeting the
district requirement of housing an ALC in the building. I believe the ALC students deserve the same core teachers and
quality of education as the Traditional, Pre-AP, & AP  students are receiving.

I will restate this adds up to five preps.  This is clearly a method of retaliation against me by you for whatever reasons
you have formulated against me.  Since we can not resolve this matter at the informal level.  I will inform Ms. Sandra
Roy we need to file a Level 1 grievance.

Sharon Walker

Maumelle High School

(501) 234-2525

---

From: GUTHRIE REBECCA
Sent: Thursday, July 31, 2014 9:41 AM
To: WALKER SHARON
Subject: RE: Informal Grievance Retaliation

## Letters

**Nayles Medical Clinic, P.A.**
**Lee C. Nayles, M.D.**
**1400 Main St**
**Little Rock, AR 72202**
501.371.0055 Phone/501.371.0088 Fax

Excuse for Absenteeism

12/30/14

SHARON  WALKER, is a patient of the clinic listed above. Ms Walker is being treated for Severe Depression I have prescribed her a new medication. Due to her condition and new medication I have taken Ms. Walker off of work at this time. I will determine if she is able to return to work on her next office visit in one month. If you have any further questions or concerns regarding this letter please feel free to contact me at the number listed above. Thank You.

Sincerely,

Lee C. Nayles M.D.



**PLAINTIFF'S EXHIBIT**
_E·1_

**Progress Notes**
WALKER, SHARON
**Patient ID:** 17802
**DOB:** 01/09/1967
**Age:** 48 years **Gender:** F

12/30/2014

12/30/14 : 02:03pm
**OFFICE VISIT**

*Exhibit*

**Date of Birth:** 01/09/67

**Vital Signs:**
Bp: 131/84, Left Arm, Pulse: 97, Regular
Temperature: 97.8 F, Oral, Height: 5'8", Weight: 200 lbs
BMI: 30.41 kg/m2

**Subjective:** This 47 year old female presents for follow up of the following problem(s):Patient here for pain in. Left Shoulder.

1. SHOULDER PAIN. Involved shoulder: left. Onset: gradual. Severity: 8/10. Quality: sharp, shooting, stabbing. Aggravating factors: lifitng. movement. sleeping on afftected arm. Throwing motion. Alleviating factors: nothing. . Status: moderately worse. . Treatments attempted: none . Relief with NSAIDs?: no . Weakness: no. Numbness: no . Decreased grip strength: yes . Redness: no . Swelling: yes . Bruising: no . Fevers: no .

2. ANXIETY/STRESS. Anxious mood: no . Excessive worrying: yes . Irritability: yes . Sweating: yes . Nausea: no . Palpitations: yes . Hyperventilation: yes . Panic attacks: yes . Agoraphobia: no . Obscessions/compulsions: yes . Depressed mood: yes .
**Health Maintenance:**Depression Screen X . Anhedonia: no . †H3‡Weight changes: no . †H8‡Insomnia: yes hard to stay asleep. . †H8‡Hypersomnia: no . †H8‡Fatigue/loss of energy: yes . Suicidal ideations: no . Crying spells: yes . Recent Stressors/Life Changes: Relationship problems: no. Family stress: no. Financial stress: no. Job stress: yes . Recent death/loss: no.

**Review of Systems:** Constitutional: No fevers, chills, or unexplained weight loss . Eyes: No visual changes or eye pain . Ears: No hearing loss , otorrhea or ear pain . Nose/Mouth/Throat: No nasal congestion, rhinorrhea, oral lesions, postnasal drip or sore throat. Cardiovascular: No chest pain or palpitations. . Respiratory: No cough, shortness of breath or wheezing . Gastrointestinal: No diarrhea, constipation, blood in stools, abdominal pain, vomiting or heartburn. Genitourinary: No urinary frequency, hematuria, incontinence, or dysuria . Musculoskeletal: No arthralgias, myalgias or joint swelling . Skin: No rash or bothersome skin lesions . Breast: No lumps or nipple discharge. Neurological: No headaches, paresthesias, confusion, dysarthria or gait instability . Psychiatric: No anxiety or depression.
**Health Maintenance:**Depression Screen X . †R11‡Hematologic/Lymphatic: No easy bruising, easy bleeding or swollen glands . †R13‡Allergic/Immunologic: No itching, sneezing , watery eyes, clear rhinorrhea or recurrent infections.

**Past Medical History: Social History:** Reviewed, see appropriate section of the chart for details.

**Family History:** Reviewed, see appropriate section of the chart for details.

Reviewed past medical history, social history, and family history. **Current Medications:**

**Medication Allergies:** Allergies: NKDA.

**PLAINTIFF'S EXHIBIT**
tabbies
*E-2*

**Objective:** Repeat manual blood pressure: 131/84
General: Well appearing, well nourished in no distress.

**Progress Notes**
WALKER, SHARON
**Patient ID:** 17802
**DOB:** 01/09/1967
**Age:** 48 years  **Gender:** F

12/30/2014

Hair: Normal texture and distribution.
Nails: normal color, no deformities
Head: normocephalic, atraumatic
Eyes: conjunctiva clear, EOM intact, PERRL.
Ears: Ear canals clear, tympanic membranes clear, ossicles normal appearance.
Nose: no external lesions, mucosa non-inflamed, septum and turbinates normal
Mouth: Mucous membranes moist, no mucosal lesions.
Throat: no erythema, exudates or lesions.
Neck: Supple without lymphadenopathy.
Heart: RRR, no murmur
Lungs: CTA bilaterally, no wheezes, rhonchi, rales. Breathing unlabored.
Abdomen: Soft, NT/ND, no HSM, no masses.
Back: spine normal without deformity or tenderness. Normal ROM
Extremities: No deformities, clubbing, cyanosis, or edema.
Musculoskeletal: Normal symmetry, tone, strength and ROM. No effusions, instability or tenderness to palpation
Lymphatics: no lymphadenopathy in cervical, axillary, or inguinal areas
Neurologic: A/O x 3. No focal deficits. Gait WNL.
Psychiatric: Intact memory, judgement and insight, normal mood and affect. Speech normal rate and tone.

## Assessment:

DEPRESSION: ICD9 = 311

**Plan:**paxil

**Follow-up:** PRN

Office Visit Level 5 : 99205

Rx: PAXIL 20MG 1 Tablet every morning , 30, Ref: 3

\#     SIGNED BY Lee C Nayles, MD (LCN)     12/30/2014 02:30PM


**Lincoln**
**Financial Group**

The Lincoln National Life Insurance Company, PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765   Fax (877) 843-3950
www.LincolnFinancial.com

## ATTENDING PHYSICIAN'S STATEMENT

| 1. Name of Patient | 3. Employer Name |
|---|---|
| SHARON WALKER | PCSSD |

| 4. When did symptoms first appear or accident happen? | 5. Date you believe patient was unable to work? |
|---|---|
| SEPTEMBER 2014 | 12-30-14 |

| 6. Diagnosis (including complications) | 7. Subjective symptoms PROBLEMS SLEEPING, DEPRESSION |
|---|---|
| ANXIETY W/ PANIC & DEPRESSION | STRESS, TENSION, PANIC, OVER CLEANING |

8. Objective findings (Including current x-rays, EKG's, laboratory data and any clinical findings)

N/A

Height: N/A

Weight: N/A

9. List of Restrictions & Limitations
UNABLE TO FUNCTION IN CLASSROOM WITH STUDENTS

10. Nature of treatment (Including surgery and medications prescribed, if any).
INDIVIDUAL PSYCHOTHERAPY, STRESS MGT, MANAGEMENT PER PCP

12. Has patient ever had same or similar condition? ☐ Yes ☒ No  If "Yes" provide dates.

13. Do you consider this condition to be due to your patient's employment?  ☒ Yes ☐ No

| 14. If pregnancy, estimated date of delivery: Actual date of delivery: N/A | 15. Date first treated | 16. Date of last visit/treatment |
|---|---|---|

17. Has patient been hospital confined? ☐ Yes ☒ No   Confined from:   to
If "Yes" give name of hospital.

18. Has surgery been scheduled or performed? ☐ Yes ☐ No   If "Yes" date of surgery:
Type of surgery scheduled: N/A   AS RELATES TO MENTAL HEALTH TX

19. Prognosis and Rehabilitation:
a. When do you think your patient will be able to return to work in their occupation? UNKNOWN AT THIS TIME
b. When could trial employment commence?   ☐ Full-time   ☐ Part-time  UNKNOWN
Please submit clinical documentation to support your decision.  (THIS WAS ATTACHED)

| Print Name (Attending Physician) | Specialty | Telephone (Include Area Code) |
|---|---|---|
| PATRICIA L. GRIFFEN, PhD | CLINICAL PSYCHOLOGIST | 501-223-8668 |

Street Address/City or Town/State or Providence/Zip Code
18 CORPORATE HILL SUITE 205  LITTLE ROCK AR 72205

The above Statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud Warning Statements.

| Signature (Attending Physician) No stamps please | Date | Fax Number (Include Area Code) |
|---|---|---|
| Patricia L Griffen PhD | 3/3/15 | |

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY IS NOT RESPONSIBLE FOR CHARGES INCURRED DUE TO COMPLETION OF THIS FORM. THE PATIENT IS RESPONSIBLE FOR ANY CHARGES ASSOCIATED WITH FORM COMPLETION.**

PLAINTIFF'S
EXHIBIT
F

June 10, 2015

Mr. Paul Brewer, Human Relations Director
Pulaski County Special School District
925 East Dixon Road
Little Rock, AR 72206

Dear Mr. Brewer:                                    RE: Mrs. Sharon Walker

I am writing this letter on behalf of my patient, Mrs. Sharon Walker, who was referred to me by her primary care physician Dr. Lee Nayles. Mrs. Walker was initially seen on February 20, 2015 for individual psychotherapy and has continued since on a regular basis. She was referred for treatment of anxiety, depression and stress, job related. Her symptoms were precipitated by her work schedule at Maumelle High School. The symptoms started prior to 2015 and she had been treated medically by her primary care physician. She was highly anxious, developed panic attacks, was obsessive compulsive about cleaning and developed medically related problems.

The goal of treatment has been to ameliorate her symptoms to the point that she can return to her job setting fall 2015. Mrs. Walker has recently been informed of her work schedule for fall 2015. She has been assigned to teach three double blocked sections of Algebra I with three sets of students, assigned for two sessions each during the day. Business Education is her area of expertise and experience. This recent information about her job assignment has increased her anxiety and anticipation of returning to the classroom. The obsessive compulsive behavior has increased.

It is my recommendation, from a clinical perspective, that accommodations are made in the work setting to reduce the stress for Mrs. Walker, and that she is assigned to Business Education with a reasonable teaching assignment.

Please feel free to contact me if you have questions or need additional information.

Sincerely,

Patricia L. Griffen, Ph.D.
Clinical Psychologist

PLAINTIFF'S
EXHIBIT
6



'iew Logs

| | Location | Applied Date | Status |
|---|---|---|---|
| 2010 School Year) | JACKSONVILLE MIDDLE SCHOOL | 07/07/2009 | Closed |
| ) | MAUMELLE MIDDLE SCHOOL | 05/13/2009 | Closed |
| | ROBINSON MIDDLE | 05/13/2009 | Closed |
| | STAR ACADEMY | 07/07/2009 | Closed |
| | SYLVAN HILLS MIDDLE | 06/23/2015 | Active |
| | ROBINSON MIDDLE | 06/15/2015 | Active |
| | MILLS HIGH | 06/15/2015 | Closed |

PLAINTIFF'S
EXHIBIT
H

American with Disabilities Act 1990                                                                                7/7/15 9:26 AM

**From:** skwalkie <skwalkie@aol.com>
**To:** pbrewer <pbrewer@pcssd.org>
**Cc:** lbednar <lbednar@pcssd.org>
**Bcc:** aeasroy <aeasroy@aol.com>; skwalkie <skwalkie@aol.com>
**Subject:** American with Disabilities Act 1990
**Date:** Fri, Jun 26, 2015 12:45 pm

Dear Mr. Brewer

I am hereby requesting that my teaching assignment be implemented in accordance to The American Disability Act of 1990. I have a documented diagnoses of hypertension on file, this file was given to Principal Guthrie ,as a part of my health records two years ago. Teaching three blocks of Algebra I back to back would only serve to aggravate my condition further possibly causing a heart attack or stroke. Therefore, I am respectfully requesting that I am assigned to teach all businesses classes, as I have done so during the past thirteen and one-half years.

Mr. Brewer, Pulaski County Special School District failed to recognized or implement any of the rights afforded me under The American Disability of 1990. I am now requesting once again that my health concerns be taken under consideration before making a teaching assignment that could be possibly detrimental to my health

My doctors have also sent letters requesting that I should be placed in the least stressful teaching environment and in this case, Business classes would meet this requisition.


Respectfully yours,

Sharon Walker



Sent via the Samsung Galaxy Note® 4, an AT&T 4G LTE smartphone



PLAINTIFF'S EXHIBIT

I

ılaski County Special School District – Application notification–Business (2015/2016 School Year)

7/7/15 1:15 PM

**From:** Chanda Watson <cwatson@pcssd.org>
**To:** Sharon Walker <skwalkie@aol.com>
**Subject:** Pulaski County Special School District - Application notification-Business (2015/2016 School Year)
**Date:** Tue, Jun 30, 2015 3:53 pm

Job Posting: Business (2015/2016 School Year)
Posting ID: POS20150605000003
Location: SYLVAN HILLS MIDDLE

This position has been filled or closed without being filled. Thank you for your interest in this position and please feel free to apply for other positions in the District.



PLAINTIFF'S
EXHIBIT

5

**From:** Chanda Watson <cwatson@pcssd.org>
**To:** Sharon Walker <skwalkie@aol.com>
**Subject:** Pulaski County Special School District - Application notification-Business/CO (2015/2016 School Year)
**Date:** Thu, Jul 9, 2015 10:22 am

Job Posting: Business/CO (2015/2016 School Year)
Posting ID: POS20150612000015
Location: ROBINSON MIDDLE

This position has been filled or closed without being filled. Thank you for your interest in this position and please feel free to apply for other positions in the District.



PLAINTIFF'S
EXHIBIT
K

Re: Americans with Disabilities Employees Forms                                                      7/8/15 7:07 AM

**From:** BREWER, PAUL <pbrewer@pcssd.org>
**To:** skwalkie <skwalkie@aol.com>; JERRY GUESS <jguess@pcssd.org>; LAURA BEDNAR <lbednar@pcssd.org>; SHAWN BURGESS <sburgess@pcssd.org>
**Subject:** Re: Americans with Disabilities Employees Forms
**Date:** Tue, Jul 7, 2015 2:48 pm

---

As I stated in our phone conversation on Monday, July 6, 2015, Dr. Guess has agreed to place you in the Business Education position for 190 days at North Pulaski High School for the 20-15-16 school year. The letter from Dr. Patrica Griffith stated that she recommends you be placed in a Business position. We need to know if you plan to accept the business position at North Pulaski or remain in a math position in the district for the 2015-16 school term. Due to planning for the 20015-16, it is imperative that you let me know so we can make staffing plans to fill the open positions for the upcoming school year. As you probably know, every employee has a one year contract, so we cannot offer you a two year contract to include the 2016-17 school year. Everyone in the district will be hired for 2016-17 based on their performance in the 2015-16 school term.

Paul Brewer
Chief Executive Officer/Human Resourses
501-234-2032

On Tue, Jul 7, 2015 at 11:06 AM, skwalkie@aol.com <skwalkie@aol.com> wrote:
Good morning Mr. Brewer:

I would like to know if Pulaski County Special School District have the Americans with Disabilities Act Employees Accommodation forms? If so, please advise me with the accommodations set forth for me by PCSSD, according to my doctor's letter dated June 10, 2015.

Sincerely,

Sharon Walker



PLAINTIFF'S
EXHIBIT

L

**Clinical Psychology Services, Inc.**

*Patricia L. Griffen, Ph.D, Clinical Psychologist*

**18 Corporate Hill, Suite 205**
**Little Rock, Arkansas 72205**

**March 3, 2015**

To: Lincoln National Life Insurance Company
From: Patricia L. Griffen, PhD, Clinical Psychologist
Re: Sharon Walker
DOB: 01-09-1967

Mrs. Sharon Walker was referred by her primary care physician for psychotherapy and stress management for treatment depression and anxiety. Since September 2014 she has become highly anxious, has developed panic attacks, problems sleeping, depression and health related issues. She has developed some obsessive compulsive behaviors manifested by over cleaning her bathroom and her car. She uses Clorox wipes several times while driving and also with her bathrooms. Prior to her leave of absence, she was using Clorox to wipe student desks frequently during the day to the point this was beginning to interfere with her effectiveness in the classroom.

She has not responded to medication only leading to a referral by her primary care physician for stress management and individual psychotherapy.

She has been seen for the following sessions: 02-20-2015; 02-26-2015 and 03-03-2015. She is compliant with treatment and I anticipate a favorable prognosis.

Patricia L. Griffen, Ph.D., Clinical Psychologist

PLAINTIFF'S
EXHIBIT
M

# PROFESSIONAL NEGOTIATIONS AGREEMENT BETWEEN

# BOARD OF DIRECTORS
# PULASKI COUNTY SPECIAL
# SCHOOL DISTRICT

# AND

# PULASKI ASSOCIATION
# OF CLASSROOM TEACHERS

# 2010-2015



**PLAINTIFF'S EXHIBIT**

## PREAMBLE

The Board of Education of the Pulaski County Special School District (Board) and the Pulaski Association of Classroom Teachers (Association), agree that each has an obligation to the public to exert their full and continuing efforts to achieve the highest possible education standards for the students whom they serve.

The Board and the Association further agree that the attainment of objectives of the educational program of the District requires mutual understanding and cooperation among the Board, the administrative staff, and the certificated teaching personnel. Both parties agree that the best interest of education is served when there exists an educational climate, which attracts and retains highly qualified teaching personnel, who are treated fairly and equitably.

Both parties herein accordingly agree to establish procedures that will provide an orderly method by which the Board and the Association may meet, consult, and negotiate in good faith to cooperatively maintain, protect, and improve the well being of its teaching personnel.

Therefore, the Board and the Association agree that they will negotiate in good faith personnel policies, salaries, and educational matters mutually agreed upon as referenced to A.C.A. 6-17-202.

**ARTICLE I CONTRACT AND PROFESSIONAL NEGOTIATIONS**

**Section 1.  Recognition**

A.  The Board of Education of the Pulaski County Special School District, here after referred to as the Board, recognizes the Pulaski Association of Classroom Teachers here after referred to as the Association, as the exclusive representative of all teachers employed by the Pulaski County Special School District, here after referred to as the District, for the purpose of negotiating the following written agreement.

    1.  The Association shall show that a majority of teachers employed by the District are members of the Association through a verified membership list submitted prior to the ratification of this Agreement.

    2.  The District may request reverification prior to renegotiation of the entire Agreement in subsequent years.

B.  The bargaining unit for which the Board recognizes the Association as the exclusive representative shall be a unit comprised of all full-time and part-time certified teaching personnel and personnel included on the supplemental salary schedule, who are not required by the District to be the evaluator of other certified personnel.

C.  New teacher classifications created during the term of this Agreement shall be incorporated into the unit as defined.

D.  The Board recognizes that the Association is affiliated with the Arkansas Education Association and the National Education Association.

**Section 2.  Management Rights**

A.  The Association recognizes the Board as the elected representatives of the people of the District and as such being the final authority in all matters pertaining to the operations of the District.

B.  The Association recognizes that the Board reserves unto itself all rights not specifically articulated in this Agreement.

**Section 3.  Terms and Definitions**

A.  Unless otherwise expressed in the text of this Agreement the following definitions and terms shall apply.

    1.  Academic Year:  The period in which school is in session as set forth in the school calendar.

    2.  Accrued Leave: Paid leave days accumulated from prior years and paid leave days credited for the current year that a teacher is entitled to use.

    3.  Administrator:  A certified employee of the District who has supervisory or evaluative responsibility.

    4.  Association:  Pulaski Association of Classroom Teachers.

    5.  Association President:  The chief executive officer of the Pulaski Association of Classroom Teachers.

    6.  Association Representative:  Any person duly authorized, elected, or appointed by the Association President or any of its governing bodies or membership.

    7.  Blue Book:  The booklets available from the Office of Professional Development which are used to verify professional growth courses completed by teachers and which must be submitted to the Office of Professional Development for salary credit from professional growth courses.

    8.  Board:  The governing body of the Pulaski County Special School District.

    9.  Coach: A teacher whose primary contract is for a teaching position and who also holds a contract for an athletic position paid on the Supplemental Salary Schedule.

    10. Course Preparation:  The creation of lesson plans for any course assigned a computer number and/or the creation of lesson plans for any class for which students are present and receiving instruction.

## ARTICLE VI TEACHER DUTY DAY

### Section 1.  Work Year

A.  Effective the 2003-2004 school year, the regular work year for teachers shall be 192 days.

B.  The work year for teachers on extended contracts shall be 192 days plus the number of additional days for the position held.

C.  The parties agree that any contract language in conflict due to this change in the number of days is subject to this provision.

### Section 2.  School Calendar

A.  The Association agrees that the Board shall have the right to establish the work year and annual school calendar.

B.  The Board agrees to establish the work year and annual school calendar in accordance with the following provisions:

  1.  Workdays for teachers shall not be established on Sundays.

  2.  Make-up days will be added at the end of the school year calendar.

    a.  In the event ten (10) or more make-up days occur the District will seek a waiver from the State Department of Education.

    b.  If a waiver is not granted, then the Board will make the required adjustments in the calendar where it deems appropriate.

  3.  Teacher-Pupil contact days will be established in accordance with State Standards unless a court order exists which permits deviation.

  4.  Classroom Preparation - At least two (2) consecutive days immediately preceding the first day of pupil attendance in the school year will be used for preparation in individual classrooms.

    a.  Pre-school in-service activities shall be held previous to these days.

    b.  New teacher orientation will not be conducted on these days.

    c.  New teachers attending orientation before these days will be paid their daily rate of pay.

    d.  Faculty meetings will be kept to a minimum.  No faculty meeting shall last more than thirty (30) minutes.

    e.  Teachers shall notify the principal in writing of any custodial problem in the classrooms.

      (1) Custodial help will be available on these days.

      (2) Classrooms will be cleaned before the first day teachers report.

        (a)  Classrooms will be vacuumed, floors mopped and/or waxed, carpets cleaned, and trash removed.

        (b)  Furniture for each classroom will be unstacked and in its assigned room.

  5.  Students will not be in attendance on the two (2) days of the AEA Convention without agreement of the Board and the Association.

  6.  Record Days - Non student contact days as per Article VI Section 4 (Record Days) of this Agreement shall be established to allow teachers time for completing records.

  7.  The principal in consultation with TAC may schedule one (1) open house beyond the workday during the first nine-weeks of school with attendance for teachers voluntary.

C.  Teachers will not be required to work on the following days:

  1.  Christmas and New Year's - seven (7) to ten (10) consecutive weekdays to be coordinated with the Little Rock and North Little Rock School Districts.

  2.  Martin Luther King's Birthday - one (1) day.

  3.  Spring Break - five (5) consecutive days scheduled according to state statute.

### Section 3.  Workday

A.  The workday for teachers shall not exceed seven (7) hours and forty (40) minutes.

1. The student day at the elementary level will be six (6) hours forty-five (45) minutes.

2. The student day at the secondary level will be seven (7) hours twenty (20) minutes inclusive of Channel One.

3. The length of the student day may be less than the above times on early dismissal days.

4. Teachers are not required to sign in when they report to work.

B. On Fridays and on days preceding holidays and vacations, the teacher's day shall end when pupils are dismissed except for those teachers with duty after school.

D. When students receive instruction from various teaching specialists, a teacher may choose to remain in his/her classroom to assist the teaching specialist if the specialist needs help in teaching the lesson.

1. Any concerns which arise between the teachers regarding what is a proper need on the part of the teaching specialist shall be addressed to and resolved by the building principal.

2. It is understood that maintaining proper classroom discipline is the responsibility of all teachers and therefore is not a sole compelling reason for a classroom teacher to remain in his/her classroom with a teaching specialist.

3. The need for assistance by the teaching specialist should preferably be planned by the classroom teacher and the teaching specialist.

4. The teacher can utilize the grievance procedure in order to ascertain her/his rights under this provision with regard to any directives by the principal.

E. When the teaching specialist is in the classroom to coach/model instruction for the teacher, the teacher will remain in his/her classroom.

### Section 4. Record Days

A. Records Days for teachers (students not in attendance) shall be established to allow teachers time within the day to complete grade books, prepare computer scan sheets and report cards, prepare for parent conferences, and complete other records relative to their contractual assignment.

B. The following times at the end of each quarter (approximately nine [9] weeks period) shall be scheduled as Records Day for teachers when pupils do not attend.

1. The first and third Records Days shall be Professional Development/Record Days and the teacher's day shall be completed after six (6) hours.

   a. The first hour of the day will be professional development training on Effective Parental Involvement Strategies, required under Act 603 of 2003 and the Arkansas State Standards.

   b. The remaining five (5) hours will be used to impact student learning and achievement.

   c. Teachers will work individually during these five (5) hours to check, review, and assess records; to determine and/or recommend student placement; to review IEP and 504 Plans; to update AIPs; to assess student work; to record grades and/or prepare computer scan sheets; to plan for instruction; to design assessment instruments related to instruction and state standards; and/or to engage in research.

   d. The specific Records Day schedule will be determined by the TAC. and the principal, and all faculty members within the school will follow the same work schedule; however, teachers unable to work the scheduled time will arrange a schedule with the principal.

2. On the second and fourth Records Days, the teacher's day shall be completed after two (2) hours forty-five (45) minutes.

   a. Teachers will work individually during these Records Days.

   b. The teacher will not be required to attend any meetings on these Records Days.

   c. Each individual teacher may choose his/her second quarter Record Day by remaining at school for two (2) hours forty-five (45) minutes after the student day or may opt to leave school at the end of the student day and work at an alternate location of the teacher's choosing.

d. Each individual teacher may choose his/her fourth quarter Record Day by working two (2) hours forty-five (45) minutes after his/her regular teacher workday ends on the last student day or by working two (2) hours forty-five (45) minutes on the next work day.

3. Faculty meetings will not be held on these days.

4. For the first, second, and third grading periods, teachers will not be required to turn in grades prior to the beginning of the first workday following the Records Day for the grading period.

5. For the fourth grading period, teachers will not be required to turn in grades for students through grade eleven (11) until the close of the Records Day for that grading period and teachers who teach seniors will turn in seniors' grades at the beginning of the day on the first Monday following the last day of senior exams.

6. The teacher can schedule conferences on these days if his/her primary record keeping duties have been completed.

7. With teacher approval, parent-initiated conferences can be held if an emergency situation arises.

8. Administration will not unilaterally schedule parent conferences on Records Days.

9. Teachers will have access to all records and forms, including scan sheets, necessary to complete required record-keeping responsibilities in a timely manner.

   a. Teachers will be given records and forms necessary for the closing of school one (1) week prior to the last workday for teachers except for standardized achievement test reports.

   b. Teachers will be given records and forms necessary for the end of each nine-week record period at least one (1) week before the end of the nine-week period.

## Section 5. Parent Conference Days

A. Parent Conferences will be scheduled district wide in accordance with Arkansas State Standards following the first and third nine-week grading periods.

B. Beginning with the 2008-2009 school year Parent Conferences will be scheduled immediately after the student day on the first Tuesday and the first Thursday of the week following the end of the first and third nine-week grading periods.

1. On these four (4) days teachers will remain at school for no more than three (3) hours after the end of the student day for parent conferences.

2. For each of these four (4) parent conference days teachers will be compensated for an additional one-half (0.5) day in addition to compensation for the regular workday.

   a. These four (4) half days which constitute two full days are included in the regular 192 day work year.

   b. Teachers who do not attend parent teacher conferences must take one-half (0.5) day leave for each day of parent conferences missed.

3. Teachers who receive a supplemental contract and have scheduling conflicts with the parent conference days will make arrangements with their building principals to make-up these days.

4. On these four (4) days elementary teachers will have the option of having preparation time forty-five (45) minutes before the student day or forty-five (45) minutes after the student day.

   a. Parent conferences for elementary teachers who choose preparation time before the student day will be scheduled immediately after the student day and these teachers will remain at school for no more than three (3) hours after the end of the student day.

   b. Parent conferences for elementary teachers who choose preparation time after the student day will be scheduled forty-five (45) minutes after the student day and these teachers will remain at school for no more than three (3) hours and forty-five (45) minutes after the end of the student day.

C. Secondary principals will send written notice to parents stating the time that teachers are available to meet for parent conferences.

1. Parents attending conferences will be asked to sign a *Secondary Parent/Teacher Conference Form.*

2. Conference forms will be kept on file to document parent participation or non-participation in conferences.

D. Elementary teachers will send a written request to each parent for a parent conference.

1. Parents attending conferences will be asked to sign an *Elementary Parent/Teacher Conference Form.*

2. A parent that does not respond or cannot attend the conference will be sent the conference form for comments and signature.

3. Conference forms will be kept on file to document parent participation or non-participation in conferences.

E. Teachers will not be responsible for parent lack of participation.

F. The conference forms will be developed jointly by the Association and the Board and included in the Appendix of this Agreement.

G. Faculty meetings will not be held on these days.

H. Teacher sign-in or sign-out for parent conference days is not required.

## Section 6.  Notification of Assignments

A. Each teacher shall be given written notice of his/her next year's tentative teaching assignment(s) no later than June 1.

1. Such notice shall specify room assignment(s), grade level(s), and subject area(s) to which the teacher will be assigned.

2. Special Education teacher tentative assignments will be core subject specific.

3. The principal shall send written notification at least five (5) days prior to the day the teachers report notifying the teacher of any changes in his/her tentative teaching assignment that occur during the summer.

B. A tentative master schedule shall be posted in each teacher's lounge no later than June 1, and a copy of the tentative master schedule shall be provided to one of the Association's building representatives.

C. Rosters of special education and Section 504 students will be provided to teachers by the first day of pre-service.

D. Teachers shall be provided with tentative class rosters on the first day teachers report, except in schools that use arena scheduling.

## Section 7.  Instructional Assignments, Elementary

A. Elementary teachers shall not be assigned more than six (6) hours of instruction daily.

B. Elementary teachers will not be assigned outside their certification area without their agreement and the approval of the Director of Elementary Education.

1. An elementary teacher assigned outside his/her certification shall be granted the first vacancy applied for, provided he/she is certified for the position.

2. An elementary teacher assigned outside his/her certification shall not be adversely affected by said assignment.

C. Changes in grade level assignments not required by enrollment changes will be justified by the principal to the Director of Elementary Education.

1. Notification to change grade level assignment must be made on or before June 1.

2. Changes will not be made during the summer without teacher agreement.

## Section 8. Instructional Assignments, Secondary

A. Secondary teachers shall not be assigned more than six (6) hours of instruction daily. Study supervision or co-curricular activity during the workday shall be considered instructional duties.

B. The District shall not assign a regular classroom teacher instruction in more than three (3) subject areas without the teacher's acceptance.

C. The District will not assign a regular classroom teacher more than three (3) course preparations without the teacher's acceptance.

D. Middle school teachers with elementary certification will not be assigned more than two (2) core subjects without their acceptance for two (2) consecutive years.

E. A secondary teacher will not be assigned to teach any class outside his/her certification or any subject in which the teacher does not have a major without the teacher's agreement and approval of the Director of Secondary Education.

   1. A secondary teacher assigned outside his/her certification area or outside a major shall be granted the first vacancy applied for, provided he/she is certified for the position.

   2. A secondary teacher assigned outside his/her certification area or major shall not be adversely affected by said agreement.

F. Except in unusual circumstances where the subject area requires a specific classroom, a regular classroom teacher will not be required to change classrooms (floating) more than three (3) times a day on a non-block schedule or more than one (1) time a day on a block schedule.

   1. Once the principal has identified the department(s) where it will be necessary to assign floating teacher(s), the teacher(s) with the least District seniority within that department will be assigned to float.

   2. Special consideration and preference shall be given to secondary floating teachers and in no case may a teacher be assigned to float two (2) consecutive years unless there is no reasonable option available and then only with the approval of the Director of Secondary Education.

   3. Floating teachers shall be provided a readily accessible locked place (e.g. file cabinet, wooden cabinet, etc.) for the exclusive use of the teacher.

   4. Floating teachers will be provided with an additional workstation in the lounge or workroom, to include a desk and a file cabinet.

   5. Floating teachers shall be provided with a means of transporting materials (e.g. rolling luggage) as they move from classroom to classroom.

   6. Whenever possible, the classrooms used by floating teachers shall be subject specific in order to facilitate the use of classroom sets of textbooks and subject specific materials and supplies.

G. A double period of instruction in a single subject area equals two (2) periods.

H. To the degree feasible, teacher planning periods will not be scheduled first or second period except upon request of the teacher.

I. Vocational work-force teachers will be expected to teach the equivalent of four (4) periods.

J. Teachers will attend departmental meetings if called by the department chair and approved by the principal.

   1. Teachers attending departmental meetings outside the workday will be compensated as per Article VI Section 17 (Overages).

   2. A teacher will not be required to attend departmental meetings during his/her lunch or preparation period.

   3. Notices for departmental meetings will be in writing.

**Section 9. Instructional Assignment, Specialists & Itinerants**

A. Teachers who specialize in specific areas of instruction or education services shall have their assignment computed in accordance with standards set forth in Sections 7 and 8 of this Article.

B. Teachers who specialize in specific areas of instruction or educational services and function as itinerants shall have their instructional assignment computed in accordance with standards set forth in Section 7 and 8 of this Article.

　　1. Travel time between schools shall be computed in the day.

　　2. Teachers will be granted a planning period and a lunch period within the day.

　　3. Travel time between schools will not be required during a teacher's lunch period or a teacher's preparation period.

C. Art, music, and physical education teachers will not be assigned to more than two (2) schools.

D. The Board and the Association agree to form a joint committee to address assignments of English as Second Language (ESL) teachers.

　　1. The make-up of the joint committee will be six (6) ESL teachers, three (3) appointed by the Association and three (3) appointed by the Board President; one (1) members of the PACT Negotiations Team appointed by the Association; and one (1) members of the Board Negotiations Team appointed by the Board.

　　2. The report of the joint committee will be submitted to the Superintendent and the Association President by January 15, 2011.

**Section 10. Preparation Time**

A. Teachers will be granted preparation time during each day.

　　1. Teachers at the elementary level will be granted no fewer than forty-five (45) minutes preparation time daily.

　　2. Elementary teachers shall have the option of having their preparation period according to the following choices:

　　　　a. The forty-five (45) minutes may be before the student day.

　　　　b. The forty-five (45) minutes may be after the student day.

　　3. Secondary teachers, including counselors and media specialists, will be granted no less than one (1) preparation period daily, with the time of the preparation period equal to the time of each student period.

　　4. Preparation time shall be free of all other activities or assignments except by teacher approval.

　　5. A teacher who does not receive preparation time will be paid his/her hourly rate of pay for any part of the preparation time lost; including, but not limited to, requirements to attend meetings, to write curriculum, to mentor, or to complete classroom research.

B. In the event a teacher is requested or required to perform additional instructional duties in excess of his/her regular workload during preparation time, the teacher shall be compensated his/her hourly rate of pay in accordance with ACA 6-17-114.

　　1. Prior to the first day students report, principals will ask for teacher volunteers who will cover classes during their preparation period for absent teachers in case no substitute is available.

　　2. If there are no volunteers available, then the principal may assign teachers on a rotating basis to substitute for absent teachers; however, no teacher will be required to substitute for an absent teacher for a subsequent time until the principal has exhausted the list of rotating teachers.

　　3. Building administrators will utilize teachers to cover classes only when substitute teachers are unavailable.

　　4. Building administrators will make efforts to avoid assigning students of an absent teacher to another teacher.

C.  Teachers who teach Talented and Gifted (TAG) and Advanced Placement courses and have three (3) preparations a day will continue to have one (1) planning period.

D.  Secondary teachers who have four (4) course preparations shall have two (2) planning periods per day. Excluded are special education, music, art, work study, semester courses, multi-level assignments within a given period, or classes with an enrollment of less than fifteen (15) students.

E.  Teachers should engage in activities during preparation time that relate directly and/or indirectly with teaching readiness and classroom routine.

F.  If a teacher leaves the school grounds during his/her preparation period, then the teacher shall sign out on a *Local School Sign-Out Form* provided by the District.

   1.  This form, jointly developed by the Association and the District, is contained in the Appendix of this Agreement.

   2.  The Teacher Advisory Committee (TAC), operating according to guidelines in Article XI Section 3 (Teacher Advisory Committee) will determine the appropriate location(s) of the sign-out forms in the building(s).

## Section 11. Non-Instructional Duties

A.  Assignments for the supervision of students during morning and afternoon bus duty will adhere to the following procedure:

   1.  Teacher volunteers will be sought to supervise morning and afternoon bus duty.

   2.  Morning and afternoon bus duty assignments will be offered by semester to teacher volunteers, with the most senior teacher volunteers receiving the assignment(s).

      a.  Teacher volunteers may select the morning bus duty assignment, the afternoon bus duty assignment, or both the morning and afternoon assignments.

      b.  Those teachers with a bus duty assignment first semester will be given first choice for the second semester assignment(s).

   3.  If there are no teacher volunteers available, the unfilled bus duty assignments will be offered to support personnel, then outside applicants.

      a.  At the first of each school year, every bus duty assignments will be posted to all employees.

      b.  If a teacher is assigned a bus duty assignment as per #4 below, the principal must show that every effort was made to secure other applicants.

   4.  If there are no volunteers available from the pool in 1-3 above, the principal will assign the least senior teacher(s) to supervise the unfilled morning and/or afternoon bus duty assignments.

      a.  Effective August 2002 no teacher will be assigned to both the morning and afternoon bus duty assignments.

      b.  Effective August 2002 no teacher will be required to accept any bus duty assignment for two (2) consecutive semesters.

   5.  Teachers volunteering for or assigned to bus duty shall be paid a stipend as follows:

      a.  A $1,000 stipend per semester for the morning and afternoon bus duty assignments.

      b.  A $675 stipend per semester for only the morning bus duty assignment.

      c.  A $325 stipend per semester for only the afternoon bus duty assignment.

   6.  Stipend amounts will be paid to teachers in one (1) lump sum amount by February 15 for first semester and by June 30 for second semester.

   7.  Bus duty assignments may be less than, but will not exceed the following time limits:

      a.  Thirty (30) minutes prior to the official start of the student day for morning bus duty assignments

      b.  Fifteen (15) minutes after the end of the student day for afternoon bus duty assignments

8. Teachers will not be required to supervise students outside the timelines in #7 above.

   a. In the event an emergency situation arises and a teacher(s) is required to supervise any student(s) outside the timelines in 7a and 7b above, that teacher(s) will be paid his/her hourly rate of pay.

   b. Compensation for such supervision will be calculated as any part of an hour equals an hour.

9. The District will determine the number of stipends each school will be allocated for morning and afternoon bus duty assignments.

B. Teachers may be required to perform the following non-instructional duties during the workday, excluding lunch period:

   1. Supervise students in halls/ramps, restrooms, and assemblies.

   2. Participate in scheduled activities with parent teacher organizations or open house activities.

C. The principal, with the involvement of the Teacher Advisory Committee, will develop and monitor schedules for equitable non-instructional duty assignments for teachers.

D. In the event an administrator is absent from his/her assigned school, no one compensated on the teacher's salary schedule will be required to substitute for the absent administrator.

E. Teachers will not be required to transport students in their personal vehicles for school business matters.

F. Teachers required to perform non-instructional duties during their preparation time will be compensated their hourly rate of pay in accordance with ACA 6-17-114.

## Section 12.  Lunch Duty

A. Teachers will not be assigned lunch duty and for 100% of the student contact days will be provided a duty-free, uninterrupted lunch period equal to the time of the student lunch period.

B. At the secondary level the lunch period for teachers will be equal to the lunch period for students, but in no case less than thirty (30) minutes.

C. At the elementary level the lunch/recess period for teachers will be equal to the lunch/recess period for students, but in no case less than forty-five (45) minutes.

D. If a teacher leaves the school ground during his/her lunch period, then the teacher shall sign out on the *Local School Sign-Out Form.*

## Section 13.  Faculty Meetings

A. In an effort to use time to the best advantage, general faculty meetings shall be called by the principal when he/she needs feedback from the faculty or when information is too detailed to put into a memo.

   1. A copy of a prepared agenda will be distributed to all faculty members at least one (1) day prior to the meeting.

   2. A copy of the minutes provided by the principal from each faculty meeting will be kept and maintained in a designated and accessible place.

   3. During the first week of school the principal will provide teachers with the specific dates on which general faculty meetings will be scheduled.

   4. Reminder notice of at least forty-eight (48) hours shall be given for all general faculty meetings.

   5. Directives given at general faculty meetings shall be reduced to writing and distributed to all faculty members as soon as possible but no later than four (4) days after the meeting.

B. Emergency faculty meetings may be called without meeting the notice requirement, but when possible twenty four (24) hours notice should be given.

   1. An emergency is a sudden, unforeseen crisis that requires immediate action.

2.  An agenda for the emergency meeting will be distributed at the meeting and minutes will be kept and maintained in a designated and accessible place.

C.  Teachers will attend all faculty meetings held during the regular workday unless prior arrangements have been made with the principal.

D.  If attendance at a faculty meeting causes a teacher to not receive preparation time as per Article VI Section 10 (Preparation Time) of this Agreement, then the teacher will be compensated at his/her hourly rate of pay for each missed preparation time.

E.  Teachers may be required to attend the following faculty meeting(s) outside the student day :

1.  Two (2) thirty (30) minute regularly scheduled faculty meetings per month before the student day begins; or two (2) thirty (30) minute regularly scheduled faculty meetings per month after the student day ends; or one (1) sixty (60) minute regularly scheduled faculty meeting per month after the student day ends.

2.  Faculty meetings held after the student day ends must begin within ten (10) minutes after the end of the student day.

3.  Teachers are free to leave the faculty meeting at the end of the required time specified above without being subject to discipline or criticism.

4.  Teachers remaining at faculty meetings beyond the times specified above will be compensated as per Article VI Section 17 (Overages) of this Agreement.

5.  Teachers required to attend additional faculty meetings beyond the meetings above will be compensated as per Article VI Section 17 (Overages) of this Agreement.

E.  The Association shall be given a place on the agenda of all school faculty meetings.

F.  More use of printed/electronic bulletins shall be used in lieu of general faculty meetings.

### Section 14.  Class Size

A.  Assignment of students to teachers will be made on an equitable basis.

B.  Elementary classes on the same grade level shall be equitable.  This equity shall be maintained throughout the school year.

C.  If an inequity develops due to withdrawal of students, the teacher with decreased enrollment shall be assigned new students until the balance is resumed, provided it does not cause a racial imbalance.

D.  Eight (8) days after the beginning of the first semester, an enrollment count will be made to determine the class loads.

1.  The principal and the involved teacher(s) will review class loads for the purpose of leveling assignments.

2.  Courses identified by the same computer number and taught by more than one (1) teacher will be equitably balanced.

3.  Equity shall be maintained throughout the school year.

4.  If an inequity develops due to withdrawal of students, the teacher with decreased enrollment shall be assigned new students until the balance is resumed, providing it does not cause a racial imbalance.

E.  The total teaching load will be equitable.

F.  While equity implies fair treatment, equity may not always result in equal numbers.

### Section 15.  Elementary Combination Classes

The District does not advocate the use of combination classes.  These guidelines must be followed if the need for combination classes arises.

A.  Students placed in combination classes shall be those that are academically compatible.

B.  Effective July 1, 2011, the recommended class size for combination classes is as follows:

    1.  Primary classes – eighteen (18) not to exceed twenty (20).

    2.  Intermediate classes – twenty (20) not to exceed twenty-three (23).

    3.  These limits may be exceeded only with the written approval of the Superintendent.

C.  New students will not be assigned to a combination class unless they are academically compatible with the make-up of the class.

D.  The principal will seek volunteers and make assignments for combination classes.

E.  First year teachers will not be assigned to combination classes unless all other viable means of assignment have been exhausted.

F.  If assigned a combination class and the teacher's afternoon classes are departmentalized, his/her students should be assigned to more than one (1) teacher, preferably to as many teachers as possible to help keep class size down.

G.  A teacher will not be assigned a combination class for two (2) consecutive years in the same school and/or grade level without the teacher's consent.

### Section 16.  Student/Teacher Ratio

A.  The student/teacher ratio for kindergarten shall be no more than twenty (20) students to one (1) teacher in a classroom.

B.  The average student/teacher ratio for grades one through three in the District shall be no more than twenty-three (23) students per teacher in a classroom, and there shall be no more than twenty-five (25) students per teacher in any classroom.

C.  The average student/teacher ratio for grades four through six in the District shall be no more than twenty-five (25) students per teacher in a classroom, and no more than twenty-eight (28) students per teacher in any classroom.

D.  In grades seven through twelve, a teacher shall not be assigned more than one-hundred-fifty (150) students daily and an individual academic class shall not exceed thirty (30) students.  In exceptional cases or for courses that lend themselves to large group instruction these ratios may be increased.

E.  Any classes exceeding the above ratios must have the approval of the Director of Elementary/Secondary Education.  No waiver will be requested from the Arkansas Department of Education that would allow class size to exceed the state standards.

### Section 17.  Overages

A.  In the event teachers are required by administration to perform instructional duties in excess of provisions set forth in this Agreement, they shall be entitled to additional compensation at their regular hourly rate of pay.

    1.  The additional compensation shall be paid pro rata on the teacher's hourly rate of pay.

    2.  Compensation will be computed in fifteen (15) minute intervals, any part of fifteen (15) minutes equals fifteen (15) minutes.

    3.  For each overage request the teacher will complete a *Teacher Overage Request Form*, which is included in the Appendix of this Agreement, copy the form for his/her personal records and submit the form to the principal, or his/her designee.

    4.  Copies of the *Teacher Overage Request Form* will be available at each meeting qualifying for overage payment.

    5.  Overage payment claims will be submitted to the District Payroll Office within twenty (20) days of the event by the principal.

B.  Instructional duties include the following:

    1.  Teachers who are required to work beyond the workday and/or contract year on School Improvement Planning and Committee Work; including Arkansas Comprehensive School Improvement Plan (ACSIP), Formative Evaluation Process for School Improvement (FEPSI), and Comprehensive School Reform Development (CSRD).

2.  Teachers who are required to work beyond the workday and/or contract year to attend special education conferences.

3.  Teachers who are required to work beyond the workday and/or contract year to attend vocational education meetings required by the State Department of Education.

4.  Teachers who are required to work beyond the workday and/or contract year to attend faculty meetings in excess of the provisions of this Agreement.

5.  Teachers who are required to work beyond the workday and/or contract year to attend departmental meetings.

6.  Teachers not under an extended contract who are required to attend meetings, workshops or trainings scheduled beyond the number of contracted days.

7.  Counselors who are required to work beyond the workday and/or contract year to complete student schedules.

8.  Special Education teachers who are required to work beyond the workday and/or contract year to complete student schedules.

9.  Teachers who are required to attend Professional Learning Community meetings outside the workday or during their planning time.

## Section 18.  Limited Facilities

A.  In classes where there exist physical limitations on work stations, the teacher may request and the principal may approve of any revision in class size.

B.  The principal must request in writing the approval of the Director of Secondary or Elementary Education and Assistant Superintendent of Human Resources for any revisions requiring additional personnel allocation.

C.  Classes may vary in size due to limited facilities.

## Section 19. Substitutes

A.  The District agrees to maintain a list of qualified persons to serve as substitutes and who will perform the duties of absent teachers.

B.  The principal or assistant principal will make an effort to hire the preferred substitute and input the teacher's absence into the system.

1.  The TAC will be involved on a monthly basis to review the substitute preference list at each school.

2.  This list will be submitted to the Director of Human Resources.

3.  This list will be updated by the Director of Human Resources on a monthly basis.

C.  Principals will make an effort to hire the preferred substitutes.

1.  Teachers may request a specific preferred substitute on the leave form and submit it to the principal or assistant principal.

2.  The leave form requesting a preferred substitute must be submitted no later than the close of the school day prior to the absence.

D.  Principals or their designees will be responsible for obtaining substitutes for absent teachers.

1.  Once a teacher has successfully notified the automated substitute calling system, he/she will not be required to notify the principal or designee.

2.  If the automated calling system malfunctions or if a teacher is unable to utilize the system, the teacher will notify the principal or designee.

3.  In the event the automated substitute calling system becomes overloaded, the system may direct the teacher to contact the principal.

E.  The principal should make efforts to avoid assigning students of an absent teacher to another teacher.

F. In the event of a reduction in force, the laid off teacher may request in writing to be placed on a preferred substitute list.

G. Substitutes will perform all duties including the non-instructional duties of the absent teacher.

## Section 20. Inclement Weather

A. The Superintendent or designee will reach a decision whether to participate in senior high extracurricular activities should inclement weather be a factor.

   1. If the Superintendent or designee is not in attendance at the activity or event, then the decision whether to participate will be made by the sponsor or coach.

   2. Secondary activities may be canceled when schools are closed due to inclement weather.

B. Teachers will not be required to report for work if schools are closed for inclement weather.

C. In case of inclement weather there will be no delayed opening of schools.

D. When schools are closed early, teachers not on duty shall be permitted to leave immediately after students are dismissed.

E. Duty teachers will perform regular duty on these days unless relieved by administrative or supervisory personnel.

F. Whenever a particular school is closed and students are dismissed due to unsafe or hazardous conditions, the faculty shall not be required to work in their particular school until conditions permit the school to be reopened.

G. The Board and the Association agree that it is hazardous for teachers to traverse ice and snow covered walkways and steps, therefore, a school will not be opened for classes until at least one (1) entrance to the school is safe.

H. Teachers shall suffer no loss in wages, benefits, or contractual or statutory advantages as a result of the implementation of this section.

## Section 21. Lesson Plans

A. A classroom teacher is responsible for preparing written lesson plans, either weekly or by unit, outlining in a brief and general manner the information to be presented during each period or in each subject.

   1. Lesson plans will be written in lesson plan books provided by the District.

   2. Teachers are not required to include any information in their lesson plan that exists in any other form.

   3. A copy of the Arkansas State Standards or the PCSSD Frameworks/Pacing Guides and PCSSD Multicultural Codes will be accessible to the teacher using the lesson plans.

   4. A teacher's lesson plans will include the following, if applicable:

      (a) Time frames and/or subject areas;

      (b) Yellow highlighting to indicate multicultural activities;

      (c) Textbook page numbers, indicating beginning and ending pages in the Teacher's Edition;

      (d) Scheduled elementary art, music, and P.E. times

B. An individual teacher may be required as part of an IIP to turn in his/her lesson plan book to his/her evaluator, but in no case may a building administrator require that all teachers in the building turn in lesson plan books.

   1. An evaluator may require a teacher, as part of an IIP, to turn in lesson plans for the current week for which the plans are written.

   2. Any teacher required to turn in lesson plans will be given written feedback on the *Lesson Plans Written Feedback Form* concerning the lesson plans at the beginning of the next workday.

3. The *Lesson Plans Written Feedback Form*, included in the Appendix of this Agreement, will be completed by the building administrator to document feedback to the teacher on his/her lesson plans.

C. Teachers will make lesson plans available for viewing upon request from a building administrator.

D. If the teacher is absent he/she will make available materials needed for the substitute teacher to conduct the activities of the day in accordance with Article XVI Section 1E.

E. The Board and the Association agree that teachers in first through twelfth grades will post assignments on a weekly basis on a web-based system that the District will provide and maintain.

   1. Exceptions to weekly assignment postings will be made when the assignment given will cover more than a one-week timeline.

   2. The posting of an assignment should include a brief summary or description of the activities, the rubric that will be used to evaluate the assignment, and the date the assignment will be due.

   3. The District will provide adequate training for teachers to successfully post assignments.

F. The Board and the Association agree to form a Lesson Plan Joint Committee to discuss the format for lesson plans.

   1. The make-up of the Joint Committee shall be six (6) administrators appointed by the Superintendent one (1) elementary principal, one (1) middle school principal, one (1) high school principal, and seven (7) teachers appointed by the Association.

   2. The report of the Joint Committee will be presented to the Negotiations Teams by May 1, 2011.

## Section 22. Class Sanctity

A. The Association and the Board recognize the importance of uninterrupted classroom learning time and agree that interruptions shall be kept to an absolute minimum.

B. Prior to the first day students report the TAC will establish specific times the public address system will be used for morning and/or afternoon announcements.

C. Special activities during the school day will be scheduled on a rotating basis, when appropriate, or class schedules will be adjusted in an effort to provide equitable learning time in the classroom.

D. Arrangements for classroom presentations, visits and/or speakers made during the prescribed teaching day shall be made by the teacher with the approval of the principal/immediate supervisor.

E. Surveillance cameras in classrooms will not be used without the express written consent of the classroom teacher.

## Section 23. Instructional Assignments, Special Education

A. Special education teachers working on annual reviews/conferences during the three (3) release days will arrange with the principal in advance if it is necessary to work at a different site.

B. A secondary special education teacher, excluding learning lab, will be assigned no more than two (2) core subjects within a single class period without his/her approval.

   1. All special education teachers within a department will be given the opportunity to schedule special education students into classes based on IEPs.

   2. Special education teachers who are required as per Article VI Section 17 (Overages) to schedule students will be paid their hourly rate of pay for each hour worked beyond the workday and/or beyond the contract year.

   3. When scheduling, special education teachers will make an effort to assign teachers only one (1) core subject per period without exceeding the allocations for the department.

C. If such information exists, the District will require the local school to provide special education teachers access to computerized student records in the following areas: attendance, discipline, current grades, and cumulative records.

D. In a co-teaching setting there will be two (2) teachers; a special education teacher and a regular education teacher.

   1. Co-teaching is defined as the practice of assigning a student with an IEP to some or all regular education classrooms and/or activities with a special education teacher.

      a. A paraeducator may be assigned to implement the goals of the IEP.

      b. The paraeducator will work under the supervision of the responsible special education teacher.

   2. The regular education teacher assigned special education students in the co-teaching setting shall receive a copy of the pertinent portions of the student's IEP from the appropriate administrator prior to the placement of the student into the teacher's classroom.

   3. The regular education and the special education teacher involved with co-teaching classes will have a common planning period, if possible.

   4. The number of students assigned to a co-teaching class will not exceed the following maximums:

      a. Elementary – Twenty-four (24) total students per class with no more than eight (8) of the students identified as receiving special education services in that specific class period.

      b. Middle School – Twenty-five (25) total students per class with no more than eight (8) of the students identified as receiving special education services in that specific class period.

      c. High School – Twenty-eight (28) total students per class with no more than eight (8) of the students identified as receiving special education services in that specific class period.

E. In building a master schedule, maximum effort will be made to assign all indirect students into one (1) class period in order to avoid assigning both direct and indirect students to the same class period.

F. No special education class will exceed eight (8) students to one (1) teacher per class.

G. The maximum load for a special education teacher will not exceed the State Standards of twenty-five (25) students to one teacher.

   1. The principal will advise the Director of Special Education in writing when the total load for an elementary special education teacher reaches eighteen (18) students.

   2. The Director of Special Education will review the specific class load and make recommendations on the needs of the students involved.

H. The Special Education Division will eliminate all unnecessary reports and paper work not required by the Arkansas Department of Education or the State Board of Education as per ACA 6-11-105.

I. Each school will have a special education designee to prepare a paperwork packet for all special education conferences, notify parent and appropriate attendees of the special education conference, make needed copies, and distribute copies to appropriate personnel.

   1. The special education designee may be a certified or non-certified person.

   2. The special education designee will be provided time during the workday to complete his/her responsibilities.

   3. Administration will provide substitutes for regular education and special education teachers to attend conferences.

J. Special Education Program guidelines and procedures to be followed for instruction, placement, class loads, scheduling, supplies, and resources will be compiled and given to all teachers on the first day teachers report.

K. In the assignment and placement of identified special education and Section 504 students in the regular classrooms, the District shall insure that such students are proportionately distributed per classroom teacher per grade level/subject area, provided, however, that placement decisions remain subject to the IEP process.

1. When special education students are placed for any portion of the day in the general education classroom, the classroom teacher will be notified and provided access to the IEP and a copy of the modifications/accommodations prior to the student's placement in that classroom.

2. If the classroom teacher is expected to provide specifically designed instruction or accommodations, he/she will have the opportunity to meet with the special education staff to discuss the contents of the IEP.

### Section 24. Reduction of Excessive Workload

A. The Board and the Association agree to form a Joint Committee to review the total workload for teachers, including Pre-K through twelfth grade teachers, and make recommendations for how to reconcile the total workload responsibilities with the time available.

B. The make-up of the Joint Committee will be as follows:

1. One (1) member from each of the Negotiation Teams to serve as Co-chairs.

2. Five (5) administrators appointed by the Superintendent, to include the following: one (1) elementary principal, one (1) middle school principal, one (1) high school principal, two (2) administrators from the Office of Educational Accountability.

3. Sixteen (16) teachers appointed by the Association President, to include the following: one (1) media specialist, one (1) counselor, one (1) classroom teacher from each grade level, pre-k through twelve.

4. One (1) School Board member appointed by the Board President.

5. The Superintendent and the Association President may agree to appoint additional members to this Joint Committee as needed to complete its charge.

C. The report of the Joint Committee will be submitted to the Negotiation Teams by January 15, 2011.

6/24/15 11:54 AM

Sharon Walker
Maumelle High School


---------- Forwarded message ----------
From: **WALKER SHARON** <swalker1000@pcssd.org>
Date: Wed, Jul 30, 2014 at 7:04 PM
Subject: Informal Grievance Retaliation
To: GUTHRIE REBECCA < RGUTHRIE@pcssd.org>
Cc: " johnwalkeratty@aol.com" < johnwalkeratty@aol.com>, GUESS JERRY < jguess@pcssd.org>, TACKETT JOHN
< jtackett@pcssd.org>, WARREN JANICE < jwarren@pcssd.org>, WHITFIELD SHERMAN <
SAWHITFIELD@pcssd.org>, " jspringer@gabrielmail.com" < jspringer@gabrielmail.com>, Sandra Roy <
aeasroy@aol.com>

Mrs. Guthrie:



PLAINTIFF'S
EXHIBIT
O

Please be informed that via this written notice of communication is my informal
grievance.

I respectfully request a change of teaching assignment from the Alternative Learning
Classroom to a Business Education assignment.

The ALC assignment will entail teaching Algebra I, II & Geometry, which
means three preps during one class period, as well as Economics, Business Law I & II.
This adds up to five preps.

I know that you have my medical accommodation letter from my doctor and that type
of schedule is a sure recipe for a **heart attack and /or stoke!!!**

I recall in May of the 2012-2013 school year you called me to your office to discuss my
teaching assignment and at that time you informed me that I was a class short of having
a full schedule.  I was also informed because of my seniority over the other teachers in
the business department, I had the option of bumping a business teacher or I could go
to the  SAC room and relieve the SAC teacher during her lunch break.  I truly
appreciated that kind gesture.  However, this school year I was never afforded that
opportunity.  I am now very concerned and perplexed as to why the scheduling of my

6/24/15 11:54 AM

class assignment is such a dilemma for the past two years. I have been with the district for over ten years. My question is why only in the last two years has this been a problem?

**This is clearly a method of retaliation against me by you for whatever reasons you have formulated against me.**

Please provide me with a written response to my informal grievance.

Thanks for your cooperation in this matter.


Respectfully yours,


Sharon Walker

Maumelle High School

501-234-2525

6/24/15 12:00 PM

Sharon Walker
Maumelle High School

---------- Forwarded message ----------
From: **WALKER SHARON** <swalker1000@pcssd.org>
Date: Thu, Jul 31, 2014 at 12:30 PM
Subject: RE: Informal Grievance Retaliation
To: GUTHRIE REBECCA < RGUTHRIE@pcssd.org>
Cc: " johnwalkeratty@aol.com" < johnwalkeratty@aol.com>, GUESS JERRY <jguess@pcssd.org>, TACKETT JOHN < jtackett@pcssd.org>, WARREN JANICE < jwarren@pcssd.org>, WHITFIELD SHERMAN < SAWHITFIELD@pcssd.org>, " jspringer@gabrielmail.com" < jspringer@gabrielmail.com>, Sandra Roy < aeasroy@aol.com>

Ms. Guthrie

We both are aware ALC students are not on grade level due to either high numbers of suspensions, absences, handicapping conditions and etc... it is unreality for you to imply ALC students will not need any or just a little of assistance. The online curriculum will require more than a tutor. Have you reviewed the ALC students standardize test scores in math? Have you reviewed their IEP's? Majority of these students are not on grade-level, proficient or advance.

I agree with you regarding the ALC students are in need of veteran teachers. Our current math teachers are veteran teachers. They have taught math at least three consecutive years. They are abreast of the latest strategies, training and tech skills to assist our ALC students in achieving their highest potential.

I disagree with you regarding teaching Geometry, Algebra I & II in the Alternative Learning Classroom during one class period does not require planning and preparation. Again this adds up to five preps. I am rather appalled you are willing to give the ALC students who are already at a disadvantage just anything for the sake of meeting the district requirement of housing an ALC in the building. I believe the ALC students deserve the same core teachers and quality of education as the Traditional, Pre-AP, & AP students are receiving.

I will restate this adds up to five preps. This is clearly a method of retaliation against me by you for whatever reasons you have formulated against me. Since we can not resolve this matter at the informal level. I will inform Ms. Sandra Roy we need to file a Level 1 grievance.

Sharon Walker

Maumelle High School

(501) 234-2525

---

From: GUTHRIE REBECCA
Sent: Thursday, July 31, 2014 9:41 AM
To: WALKER SHARON
Subject: RE: Informal Grievance Retaliation

September 25, 2014

To: Dr. Guess, PCSSD Superintendent

From: Sharon Walker, Maumelle HS

Re:  Grievance #14-10-09
     Level III – School Board

My grievance was not resolved informally, at Level I and at Level II; therefore, I submit my grievance at Level III of the grievance procedure.

***Statement of Grievance:***  Based on Dr. Guess' Level II grievance response, I am convinced that the 2014-2015 teaching assignment recently given to me by my principal is both a capricious and a retaliatory act against me. The Alternative Learning Classroom (ALC) teaching assignment entails teaching Algebra I, II, and Geometry, which means I am responsible for three preparations for one class period, as well as Economics, and Business Law I and II. This means that I am responsible for at least 6 preparations. My principal is aware of my medical accommodation letter. My principal's teaching assignment negatively impacts my medical condition. Again I believe that my current teaching assignment is unreasonable. I agree that ALC students are in need of veteran teachers.  Our current math teachers are veteran math teachers. They have taught math at least three consecutive years. They are abreast of the latest strategies, training and technology skills to assist our ALC students in achieving their highest potential. I believe the ALC students deserve the same core teachers and quality education as the traditional, Pre-AP and AP students are receiving.  I am one of the more senior teachers in the Business Department. Assigning me ALC students is not a sound educational decision. There are math teachers that should have formed the pool for this teaching assignment. Since Ms. Guthrie has been my principal, I have had to complain about racial discrimination against me, I have had to grieve other actions taken by her against me, and I have had to request high level district administrators to intervene on my behalf.  All of these past challenges have been resolved in my favor.  I am convinced because of my past successful challenges within district protocol, that Ms. Guthrie has issued me this unreasonable teaching assignment for the 2014-2015 school year.

***Remedy:***  I request that my teaching assignment is changed to an assignment in the Business Department, where our students will benefit from my expertise and teaching experience (over ten years) in this field.

My AEA/PACT representative is Sandra Roy. Please contact her at 501-837-5433 with the date and time for the Level III grievance hearing.

Thank you in advance for your attention to this matter.

C:  Sandra Roy, PACT/AEA
    AEA Legal


PLAINTIFF'S
EXHIBIT
P

June 10, 2015

Mr. Paul Brewer
925 East Dixon Road
Little Rock, AR 72206

RE: Sharon Walker
    January 09, 2015

Dear Mr. Brewer:

This missive is a request for reasonable accommodation for Mrs. Walker under the Americans with Disabilities Act of 1990 (ADA).

Sharon Walker has high blood pressure due to work related stressors. On December 30, 2014, I declared my patient disable due to anxiety panic attacks, excessive worries and stress caused by her unreasonable math teaching assignment. My patient was teaching two business courses in addition to three math classes taught simultaneously during one class period. This caused her to have five classes to prepare daily lesson plans. The District, as mandated by the State, only requires a teacher to have two courses for which to prepare lessons. This teaching assignment has grossly impacted Mrs. Walker's mental, physical and emotional stability.

During Sharon's follow-up visit today, I learned that her teaching assignment for 2015-16 is even worse than last year's teaching assignment. She has been assigned to teach Algebra A/B which consist of three double-blocked sections. Mrs. Walker will average 500 hours per week with each student. This assignment is not conducive for my patient's disability. This will impact Mrs. Walker's health in a negative way- such as causing her to have a heart attack, stroke, and possibly relapses of panic attacks.

As Mrs. Walker's physician with prior and ongoing knowledge of her disability, I am respectfully requesting ADA be implemented and Sharon Walker be assigned to teach all business courses as she had done for 14 years. Math classes are too stressful and cause my patient blood pressure to reach hypertensive level. . I cannot release my patient to return to work with this type of working assignment. I am being proactive in an effort to prevent deterioration in Mrs. Walker's health. Please give Mrs. Walker disability and the impact of such an impossible teaching assignment to her health adequate consideration.

Sincerely,



PLAINTIFF'S
EXHIBIT
Q

Lee Nayles, M.D.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHARON K. WALKER                                                    PLAINTIFF

VS.                          CASE NO. 4:15-CV-00695 SWW

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
A Public Body Corporate                                            DEFENDANT

### AFFIDAVIT OF SHARON K. WALKER

Comes the affiant Sharon K. Walker, submitting the following affidavit under oath:

1.    I am currently teaching in the North Little Rock School District.

2.    I was employed by the North Little Rock School District during the 2015-2016 school year, having been employed in February 2016.

3.    I was formerly employed by the Pulaski County Special School District (PCSSD).

4.    During December 2014, I was forced to go out on Family Medical and Leave Act (FMLA), due to my disability due to mental reasons.

5.    During the Summer 2015, I requested reasonable accommodations from the PCSSD, to be allowed to teach my regular business education classes.

6.    During the Summer of 2014, I found out that I was being required by my Principal Rebecca Guthrie that I had to teach my business education classes, on top of having to teach three (3) math classes during the Alternative Learning Education class.

7.    The above mentioned scheduled was in violation of the collective bargaining agreement between the Pulaski Association of Classroom Teachers and the Pulaski County Special School District.

8.    Despite this violation of the collective bargaining agreement, and against the sake of my health, I taught this schedule that was forced upon me, during the Fall of 2014.

9.    The above mentioned schedule caused me to have five (5) preps.

10.   The PCSSD placed a double blocked schedule on me for the 2015-2016 school year, meaning that I had classes consisting of 100 minutes per day, 500 minutes per week, when the normal load for a teacher was 50 minutes per day, 250 minutes per week.

11.   Due to tremendous workload that was being placed on me, I was diagnosed with the condition of severe depression, obsessive compulsive disorder (OCD), and anxiety. My

1



PLAINTIFF'S
EXHIBIT
R

medical condition interfered with my ability to sleep and work, which led me to having to go out on FMLA starting December 30, 2014.

12. With my disability in mind, my doctors – Patricia Griffen, Ph.D., and Lee Nayles, M. D., requested on June 10, 2015, that the PCSSD afford me with reasonable accommodations by allowing me to teach my normal business education classes.

13. The PCSSD responded by offering me a job with the North Pulaski/Jacksonville School District, that was being detached from the PCSSD starting in 2016-2017 school year.

14. During June 2015, there were three (3) business education classes that were vacant within the PCSSD: Mills, Robinson Middle, and Sylvan Hills Middle.

15. I applied for the above mentioned jobs.

16. Furthermore, before these jobs opened, Paul Brewer, the CEO for the Pulaski County Special School District, had promised me that the district would place me in one of the vacant business education classes due to teachers retiring or leaving the district.

17. I applied for the above mentioned jobs at Mills, Robinson, and Sylvan Hills.

18. I was granted interviews with Mills and Robinson, but I was not granted an interview with Sylvan Hills.

19. To my knowledge, the Pulaski County Special School District hired outside applicants for all three (3) positions, two (2) Caucasian and one African-American.

20. I was never offered any of the business education positions at Mills, Robinson, or Sylvan Hills.

21. Had the PCSSD offered me one of the business education classes or assigned me to one of the business education classes, that were vacant, I would have readily accepted the offer.

22. I was hoping that the PCSSD would have assigned me to one of the vacant business education classes, but it chose not to do so.

23. I did not resign from the PCSSD. In that I was never offered the business education classes at Sylvan Hills, Mills, and Robinson, I interpreted that the PCSSD no longer desired to employ me; therefore, I was terminated.

24. I am currently enrolled at Arkansas State University (ASU), pursuing my MSE in Special Education.

25. I receive services through ASU's disability services, due to my recognized OCD, anxiety, and depression. (See Exhibit "A").

26. The North Little Rock School District also affords me accommodations based on my disability.

This statement is true and correct to the best of my knowledge, records, information and belief.

_Sharon K. Walker_
Sharon K. Walker

STATE OF ARKANSAS )
                  ) ss.
COUNTY OF PULASKI )

SUBSCRIBED and SWORN to before me, a Notary Public, on this 13th day of March 2017.

_Lonnette M. Davis_
NOTARY PUBLIC

MY COMMISSION EXPIRES:

May 15, 2018

LONNETTE M. DAVIS
COMM. #12365960
Notary Public - Arkansas
Pulaski County
My Comm. Expires May 15, 2018

3

**COMPOSE**

↩ Reply    ⟲ Reply All    ➔ Forward    🗑 Delete    ⊖ Spam    More ▾

Search Mail

**Fwd: [DServices] Sharon Walker - ELSE 6163.10A - POSITIVE BEHAVIOR INTERVENTION (CRN: 1:**

**Sharon Walker** to you   show details

Today on AOL

| | |
|---|---|
| Inbox | 14172 |
| Drafts | 35 |
| Sent | |
| Spam | 125 |
| Trash | |
| Contacts | |
| Calendar | |
| My Folders | |
| Saved Mail | |
| Saved Chats | |
| Notes | 2 |
| Pleading | 1 |
| Sent Items | |

---------- Forwarded message ----------
From: dservices@astate.edu <dservices@astate.edu>
Date: Friday, January 20, 2017
Subject: [DServices] Sharon Walker - ELSE 6163.10A - POSITIVE BEHAVIOR INTERVENTION (CRN: 13779) - Notification of DSe
To: Sharon Walker <sharon.walker1@smail.astate.edu>

**Accommodations Notification**

---

**A-STATE**
**Office of Disability Services**

**Important Notice:** The information in this letter is strictly confidential!

**To: Kimberley Davis - Spring 2017 - ELSE 6163.10A - POSITIVE BEHAVIOR INTERVENTION (CRN: 13779)**
From: Dr. Jenifer Rice-Mason, Director of A-STATE Disability Services
Date: Friday, January 20, 2017
**RE: Sharon Walker ID: 50500931**

Please be advised that **Sharon Walker** is a student with a disability who is enrolled in your class for the Spring 2017 academic term
academic adjustment(s) in the classroom.

**Specific accommodations the student is eligible to receive:**

1. **Alternative Testing**

   - ***Extra Time 1.50x***
     Student is eligible for up to time and a half for testing.

2. **Classroom Access/Accommodations**

   - Assignments should be specific and given in writing
   - ***Modify assignments due to disability***
     Student may need to have assignments or testing modified due to disability. Please contact our office for assistance.

**Additional Notification(s):**

1. Extension on Assignments up to 1-2 days

Please note that the recommended academic adjustments could comprise an incomplete list. Accommodation needs can change o'
adjustments for the student, please visit with me as soon as possible to discuss possible solutions.

"Students who require academic adjustments in the classroom due to a disability must first register with A-STATE Disability Service
Appropriate arrangements can be made to ensure equal access to this course."

The confidentiality protocol between A-STATE and the student with a disability requires absolute privacy of the student's evaluation
course.

**Important Links:** Faculty Resources for Accommodating Students with Disabilities
http://www.astate.edu/a/disability/faculty-resources, http://www.washington.edu/doit/Faculty



EXHIBIT

A

AUSTIN PORTER JR.
Attorney at Law

**PORTER LAW FIRM**

The Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
E-mail: Aporte5640@aol.com

Telephone (501) 244-8200
Facsimile (501) 372-5567

August 17, 2015

**Sent *via* Certified Mail**
**Return Receipt Requested**
**Parcel No. 7014 1820 0001 9365 1480**

Paul Brewer
Chief Executive Officer
Pulaski County Special School District
925 East Dixon Road
Little Rock, Arkansas 72216-8601

Re: Sharon Walker



PLAINTIFF'S EXHIBIT
5

Dear Mr. Brewer:

Please be advised that I have been retained to represent Sharon Walker. It is my understanding that Ms. Walker is employed by the Pulaski County Special School District in the capacity as a business education teacher. Ms. Walker has been an education teacher for thirteen (13) years, and has been with your district for approximately ten (10) years. Ms. Walker advised that you wanted her to teach three (3) double blocks of Algebra 1, consisting of 500 minutes weekly per student. As you know, Ms. Walker is currently under the doctor's care for stress relate issues, as well as depression. Ms. Walker's physician Patricia L. Griffen, Ph.D., sent you a letter dated June 10, 2015, asking that you provide a reasonable accommodation, by allowing her to teach one of the available three (3) business classes, but you refused to make an accommodation.

I am in receipt of your letter dated August 13, 2015. Although you offered Ms. Walker a position with North Pulaski High School (which will be taken over by the newly established Jacksonville/North Pulaski School District), she was informed that her job would only last for one year, and that teachers would then be asked to reapply. Placing Ms. Walker in such a position, would only add additional stress and anxiety, which her doctors are currently treating her for. Therefore, such an accommodation, was not reasonable in light of Ms. Walker's condition. Ms. Walker has advised you that she is ready and willing to return to the Pulaski County Special School

Mr. Brewer
August 17, 2015
Page 2

District, teaching a business education class. Again, I am advising you that Ms. Walker is ready and willing to return to the Pulaski County Special School District, teaching a business education class, which she had previously taught for the past ten (10) years.

Ms. Walker is not resigning her position, just to be clear, but is ready to return to work. Again, I am asking that you accommodate Ms. Walker by placing her in a business education class with the Pulaski County Special School District.

Should you have any questions or concerns regarding this matter, please do to hesitate to give me a call. I look forward to hear from you in reference to this matter.

Sincerely,

Austin Porter Jr.
Attorney at Law

/apj