## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRIC OF ARKANSAS
## WESTERN DIVISION

SHARON K. WALKER        *

                   *

             PLAINTIFF    *

                   *

V.                          *            CASE NO.  4:15CV00695 SWW

                   *

                   *

PULAKSI COUNTY SPECIAL    *

SCHOOL DISTRICT           *

                   *

           DEFENDANT    *

## OPINION AND ORDER

Sharon Walker (Walker) brings this employment dispute against her former employer, the Pulaski County Special School District (PCSSD or District), claiming that PCSSD discriminated against her because of her disability and retaliated against her, all in violation of the Americans with Disabilities Act (ADA).  Before the Court is PCSSD's motion for summary judgment [ECF Nos. 12, 13, 14], Walker's response in opposition [ECF Nos. 19, 20, 21], and PCSSD's reply [ECF No. 22].  After careful consideration, and for reasons that follow, the motion is granted, and the case is dismissed with prejudice.

## I.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).   As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial.  *Id*. at 587.  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

## II.

Walker, a teacher, began working for PCSSD in 2005.  In 2011, she transferred from Mills High School to Maumelle High School, where Rebecca Guthrie served as principal.   In 2013, Walker learned that Guthrie had plans to move her to a small classroom, which Walker describes as a "cubbyhole."[1]  During the same period of time, Walker experienced high blood pressure, and she presented Guthrie with two letters from her doctor, Srinivasan Ramaswamy, M.D., explaining that she took a diuretic for hypertension and required frequent bathroom breaks.[2]   The "cubbyhole" classroom that

---

[1] ECF No. 20-1, at 14 (Walker Dep. at 61).
[2] ECF No. 21–2, at 1-2 (Plf.'s Exs. B, C).

Guthrie had planned for Walker did not accommodate her need for frequent bathroom breaks, and Guthrie permitted Walker to stay in her original classroom.[3]

For many years, Walker taught only economics and business law courses, but in 2014, Guthrie assigned her to teach an alternative learning environment (ALE) class, in addition to economics and business law classes.  Walker learned about the assignment before the start of the 2014-2015 school year, and by email dated July 30, 2014, she submitted an informal grievance to Guthrie.  In addition to complaining that the ALE class assignment would result in a heavy workload, Walker stated: "I know that you have my medical accommodation letter from my doctor, and that type of schedule is a sure recipe for a heart attack and/or stroke!"[4]  Walker also claimed that that Guthrie had assigned her to teach an ALE class as a "method of relation against me . . . for whatever reasons you have formulated against me."[5]

The ALE class included approximately twelve to fifteen students, enrolled in the class because they were not performing at grade level.   Additionally, the students were performing a different grade levels, and it had been planned that they would study different math subjects individually, using computer software programs.  However, the software was not available when the class started, which required that Walker prepare

---

[3] ECF No. 20-1, at 18 (Walker Dep. at 66).  When asked whether PCSSD accommodated her by allowing her to stay in her classroom, Walker responded: "After much, much stress, yes."
[4] ECF No. 21-2 (Pl.'s Ex. D).  Walker's mention of a "medical accommodation letter" was, apparently, a reference to Dr. Ramaswamy's letters stating that she suffered from hypertension and needed frequent bathroom breaks.
[5] *Id.*

separate lessons for Algebra I, Algebra II, and Geometry, in addition to preparing for her business law and economics classes.   In deposition, Walker recalled that student behavior problems in the ALE class were "off the charts," and the environment, which included profanity and fighting on a daily basis, was not conducive to learning.[6]

Walker's grievance about teaching the ALE class was not resolved at the informal or successive levels of the PCSSD grievance procedure, and the matter was set for a hearing.  However, Walker took medical leave before the hearing was complete. According to Walker, her workload caused her to suffer severe depression, anxiety, and obsessive-compulsive disorder, and these conditions caused her to take leave, beginning December 30, 2014.[7]

Walker did not return to work for the remainder of the 2014-2015 school year. Her leave period was set to expire on April 8, 2015, but at her request, PCSSD extended her leave and maintained her employment.   In June 2015, PCSSD assigned Walker to teach "double block" Algebra I classes for the 2015-2016 school year at Maumelle High, which she believed would be too stressful.[8]  Patricia L. Griffen, Ph.D., a clinical psychologist, informed the PCSSD Human Relations Director, Paul Brewer, that she was treating Walker for job-related depression, stress, and anxiety.  By letter dated June 10, 2015, Dr. Griffen requested an accommodation for Walker, stating as follows:

> Mrs. Walker has recently been informed of her work schedule for fall 2015.
> She has been assigned to teach three double blocked sections of Algebra I

---

[6] ECF No. 20-1, at 13 (Walker Dep., 50).
[7] ECF No. 20-1, ¶ 11 (Walker Aff., Pl.'s Ex. B).
[8] ECF No. 21-1, at 38 (Walker Dep., 109).

> with three sets of students, assigned for two sessions each during the day. Business Education is her area of expertise and experience. This recent information about her job assignment has increased her anxiety and anticipation of returning to the classroom. The obsessive-compulsive behavior has increased.
>
> It is my recommendation, from a clinical perspective, that accommodations are made in the work setting to reduce stress for Mrs. Walker, and that she is assigned to Business Education with a reasonable teaching assignment.[9]

On July 6, 2015, Brewer offered Walker a job teaching all business courses at North Pulaski High School for the 2015-2016 school year, and Walker refused the offer. At the time, North Pulaski High was part of the PCSSD, but it was slated to detach from PCSSD in 2016 and join a new school district that would be created—the Jacksonville-North Pulaski School District (JNPSC). According to Walker, the job offer put her in a stressful situation because she had no assurances that JNPSC would maintain her employment beyond the 2015-2016 school year. In a letter to Brewer dated July 7, 2015, Walker stated: "Placing me in a job with no job security at the end of the 2015-16 [school year] is not an option and it does not comply with the [ADA]."[10] In a response, Brewer reminded Walker that PCSSD issued one-year employee contracts only and that the District could not offer her a contract beyond the 2015-2016 school year.[11] Walker testifies that she applied for three other PCSSD teaching vacancies for the 2015-2016 school year, but she was not hired for those positions.

---

[9] ECF No. 12-3.
[10] ECF No. 12-4.
[11] Id.

By email dated August 3, 2015, Walker inquired whether her "FLMA" would be extended.  She also advised Brewer that her doctor had extended her medical leave and would reevaluate her on September 3, 2015 and determine whether she was able to return to work. [12]  On August 5, 2015, Walker filed a complaint with the Equal Employment Opportunity Commission (EEOC) charging that PCSSD had discriminated against her based on disability.[13]

By letter dated August 13, 2015, Brewer informed Walker that if she were released to return to work after September 3, 2015, and she wanted to return to work, he would do his best to find her a job with PCSSD.[14]  Brewer's letter concluded, "If your doctor doesn't release you, or if I don't hear from you, I will assume that you have resigned."[15]  Walker did not return to PCSSD, and at some point, she accepted employment with the North Little Rock School District, where she teaches special education classes.

## III.

With her amended complaint, Walker charges that PCSSD discriminated against her based on disability by (1) terminating her employment, (2) subjecting her to disparate terms and conditions of employment, and (3) failing to make reasonable accommodations for her disability.  Walker also claims that PCSSD retaliated against her for filing an EEOC charge by terminating her employment.

---

[12] ECF No. 12-5
[13] ECF No. 12-7
[14] ECF No. 12-6.
[15] *Id.*

**Disability Discrimination**

To obtain relief under the ADA, Walker must make a prima facie showing that (1) she has a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action as a result of disability.  *See Fenney v. Dakota, Minnesota & E. R. Co*., 327 F.3d 707, 711 (8th Cir. 2003)(citing *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)).

PCSSD contends that Walker is unable to show that she has a qualifying disability, and Walker asserts that she "suffered from obsessive compulsive disorder and depression, that interfered with her ability to work" and that "therefore she [is] disabled within the meaning of the Act."[16]

"Disability" under the ADA is defined as "[A] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).  An individual is substantially limited in performing a major life activity where that individual is "[u]nable to perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which" she can perform a particular major life activity. *Id*. § 1630.2(j)(1)(i), *(*ii). A substantial limitation on the major life activity of

---

[16] ECF No. 21, at 16.

working means that an individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Id.* § 1630.2(j)(3)(i).

Here, it is undisputed that Walker is currently working for the North Little Rock School District as a special education teacher, and she cannot show disability based on temporary medical leave and a clinician's request that the District assign her to teach business courses only.  Furthermore, nothing in the record indicates that PCSSD regarded Walker as significantly restricted in the major life activity of working.  In fact, PCSSD offered Walker two teaching positions for the 2015-2016 school year.  In sum, the Court finds no genuine issue of material fact as to whether Walker has a disability within the meaning of the ADA.

Even assuming that Walker could show that she is disabled within the meaning of the ADA, she is unable to show that PCSSD failed to offer her a reasonable accommodation.  First, PCSSD was not obligated to provide the accommodation requested or preferred by the Walker.  *See Cravens v. Blue Cross & Blue Shield of Kansas City,* 214 F.3d 1011, 1019 (8th Cir. 2000)(citing 42 U.S.C. §§ 12111(9), 12112(b)(5)(A); *Gile v. United Airlines, Inc*., 95 F.3d 492, 499 (7th Cir.1996)). Second, when an employer has offered a job reassignment as a reasonable accommodation, the ADA plaintiff must offer evidence showing that the position offered was inferior to her former job and that a comparable position for which she was qualified was open.  *See Kallail v. Alliant Energy Corp. Servs., Inc*., 691 F.3d 925, 933 (8th Cir. 2012)(citing *Rehrs v. Iams Co*., 486 F.3d 353, 359 (8th Cir. 2007)).  Walker contends that the offered

position at North Pulaski High was inadequate because there was no guarantee that she would have a job beyond the 2015-2016 school year.  However, it is undisputed that PCSSD hires teachers on an annual basis and does not offer multi-year teaching contracts, and Walker presents no evidence that her former job or another available job within the District would have provided more job security or provided a guarantee of future employment.

Nor can Walker show that PCSSD terminated her employment based on a disability.  With his letter dated August 13, 2015, Brewer told Walker that if she were released to return to work after September 3, 2015, he would do his best to find and offer her a position with PCSSD. Brewer's letter concluded: "If your doctor doesn't release you, or if I don't hear from you, I will assume that you have resigned."[17]  The record is void of evidence that after receiving Brewer's letter, Walker notified PCSSD that her doctor released her to work or that she wanted a teaching position with PCSSD.

Walker claims that the District's offer of employment for the 2015-2016 school year, which came before Brewer's August 13 letter, amounted to constructive discharge because her uncertainty about future employment was "too stressful."  However, "[a] plaintiff claiming constructive discharge must show that a reasonable person would have found the conditions of employment intolerable and that the employer either intended to force the employee to resign or could have reasonably foreseen that the employee would do so as a result of its actions." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th

---

[17] ECF No. 12-6

Cir. 1999).   Walker's dissatisfaction with a one-year job offer simply does not provide a basis for a constructive discharge claim.

Finally, Walker provides no evidence that PCSSD treated her less favorably than similarly-situated employees, which is fatal to her disparate treatment claim. *Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 657 (8th Cir. 2001)

### Retaliation

Finally, Walker maintains that after she requested a reasonable accommodation, PCSSD retaliated against her.   With no direct evidence of a retaliatory motive, Walker bears the initial burden to show (1) that she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events.  *See Lors v. Dean*, 746 F.3d 857, 867-68 (8th Cir. 2014)(citations omitted).  Proof of an adverse employment action requires a tangible change in duties or working conditions that constitutes a material employment disadvantage.  *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).

Walker claims that PCSSD retaliated against her for requesting an accommodation under the ADA by terminating her employment.  For reasons explained in connection with Walker's wrongful termination and failure to accommodate claims, Walker is unable to show that PCSSD terminated her employment, constructively or otherwise.  Walker also argues that PCSSD retaliated against her by offering her a job at North Pulaski High School, instead of one of the three open positions to which she applied.  However, Walker provides no evidence that the teaching position at North Pulaski High School

carried with it a significant change in her working conditions or a diminution in her title, salary, or benefits.   Given the lack of adverse employment action, Walker's retaliation claim must fail.

**IV.**

For the reasons stated, Defendant's motion for summary judgment [ECF No. 12] is GRANTED.  Pursuant to the judgment entered together with this order, this action is dismissed with prejudice.

IT IS SO ORDERED THIS  1st  DAY OF MAY, 2017.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE